UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHCUSETTS

C.A. No. 04-11024-RWZ

|  |  |
|---|---|
| JEANNE DEGAN,<br>Plaintiff<br><br>v.<br><br>GOLDWELL OF NEW<br>ENGLAND, INC. and<br>R.G. SHAKOUR, INC.,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT

### Nature of the Action

This is a suit in law and equity seeking redress for violations of M.G.L. c. 151B, § 4(16) and the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 1611 *et seq.* Jeanne Degan was an employee in good standing who incurred a work-related injury; she sought a reasonable accommodation; after her joint-employer failed to provide a reasonable accommodation, she requested FMLA leave. Her joint-employer then terminated her employment. All jurisdictional requirements have been met.

### Parties to the Action

1. Jeanne Degan (hereinafter referred to as "Plaintiff" or "Degan") resides at 27 Mallego Road, Barrington, New Hampshire 03825. At all relevant times,

she was jointly employed by Goldwell of New England, Inc. and R.G. Shakour, Inc.

2.     Goldwell of New England, Inc. (hereinafter referred to as "Goldwell") has a principal place of business at 375 Hopping Brook Road, Holliston, Massachusetts 01746.  At all times relevant to this action, Goldwell and R.G. Shakour, Inc. each paid an equal amount of Plaintiff's salary.  Goldwell paid Plaintiff, and R.G. Shakour, Inc. reimbursed Goldwell for R.G. Shakour, Inc.'s portion of Plaintiff's salary.  R.G. Shakour, Inc. and Goldwell co-supervised Plaintiff's work, and the two entities functioned as Plaintiff's joint employer.

3.     R.G. Shakour, Inc. (hereinafter referred to as "R.G. Shakour") has a principal place of business at 254 Turnpike Road, Westboro, Massachusetts 01581.  At all relevant times, R.G. Shakour paid the same portion of Plaintiff's salary that Goldwell paid.  Both R.G. Shakour and Goldwell supervised Plaintiff's work, and the two entities functioned as Plaintiff's joint employer.

### Facts Common to All Claims

4.     Plaintiff began work for Goldwell, a distributor of cosmetology products, on or about August 31, 1998, where she held the position of Artec Brand Manager throughout her employment.  Plaintiff came to Goldwell with more than fifteen years' experience in the industry.  Artec is a hair product line now owned by L'Oreal.

5.     At the time she was hired, Plaintiff shared management of her region with a counterpart.  Plaintiff managed the Northern part of the region, and her counterpart

managed the Southern part. Plaintiff's job responsibilities included assisting sales people in building the Artec business line in salons. Toward this end, Plaintiff would commute to an account manager's sales territory on Mondays through Thursdays and then ride with the account manager to salons to make sales. Plaintiff's commutes to her destinations usually involved, on average, 1 to 1 ½ hours of driving each way. Plaintiff also hired, trained, and managed two part-time educators. Because Friday is usually salons' busiest week-day and owners do not want to spend Fridays on purchases, Plaintiff and Goldwell agreed at the time of Plaintiff's hire that she would work in her home office on Fridays. Plaintiff's home office is fully equipped, and she performed administrative tasks and made telephone calls on Fridays.

6. On June 15, 1999, Plaintiff was injured in a job-related vehicle accident. Plaintiff made a Workers' Compensation claim, and her medical treatment was paid for by the Workers' Compensation insurer. Plaintiff's doctor provided Goldwell's Human Resources Department with medical and therapy reports.

7. Notwithstanding Plaintiff's Workers' Compensation claim and her therapeutic treatments, she remained capable of performing the essential functions of her job, and with accommodation she is a qualified handicapped person, pursuant to M.G.L. c. 152, § 75B(1) and/or M.G.L. c. 151B, § 4(16).

8. In April 2000, Plaintiff was promoted to manager of her entire region, North and South, and she became jointly employed by Goldwell and R.G. Shakour. Plaintiff, Goldwell, and R.G. Shakour agreed that Plaintiff's work

schedule would continue to entail four days working in the field with account managers and one day performing administrative tasks in her home office.

9. From April 2000 until the time of Plaintiff's termination, Goldwell and R.G. Shakour shared the expense of Plaintiff's salary; Goldwell and R.G. Shakour functioned as "sister" corporations, conducting educational shows and events together, co-assigning job duties to Plaintiff, and coordinating Plaintiff's schedule. Plaintiff reported both to Renee Shakour, Vice President of R.G. Shakour, and to Cheryl Holladay, Director of Education at Goldwell. R.G. Shakour prepared, on a monthly basis, a combined Artec sales report, which was based on both Goldwell's and R.G. Shakour's sales of Artec brand products.

10. In December 2000, Plaintiff's work-related injury was exacerbated when Plaintiff was on a holiday, and the vehicle she was riding in was rear-ended by another vehicle, causing whiplash, neck pain, and back pain.

11. Beginning in January 2001, Plaintiff saw a psychologist for pain management, and on Fridays, she had a regularly-scheduled ½-hour session with her physician who was treating her pain with acupuncture. Thus, Plaintiff was able to obtain treatment on the day that she was not driving long distances and to heal after each treatment over the weekend.

12. In or about late September 2001, Plaintiff learned that she needed to come to the Goldwell Holliston office for a Friday meeting. Plaintiff telephoned Mary Garneau, Controller, and inquired which Friday was involved. Plaintiff went on to

say that she would need to reschedule her therapy appointment. Garneau questioned Plaintiff about her condition and therapy.

13. Mary Garneau and Renee Shakour discussed Plaintiff posing a liability.

14. Garneau subsequently told Plaintiff during a telephone conversation that Plaintiff was a liability to the company.

15. At the Friday meeting, John Foundas, President of Goldwell, Plaintiff's two bosses, Sheryl Holladay of Goldwell and Renee Shakour of R.G. Shakour, and Mary Garneau, told Plaintiff that they knew nothing about the therapy that she was undergoing; she had to provide a doctor's note to return to work; and they sent Plaintiff home.

16. Plaintiff provided the Defendants with medical documentation from her physician that she had neck and back injuries and that with the minor accommodation of attending a physical therapy session each Friday, followed by working from her home, Plaintiff was able to perform the functions of her job, e.g., long drives in a vehicle on four consecutive days. Plaintiff's physician also indicated that Plaintiff was capable of occasionally making long drives on five consecutive days, if a special event or show required her presence on a Friday.

17. Mary Garneau informed Renee Shakour about the documentation from Plaintiff's doctor.

18. On or about October 22, 2001, at a meeting in the Holliston office, John Foundas, Cheryl Holladay, Renee Shakour, Mary Garneau, and the Human

5

Resources representative informed Plaintiff that she had to work in the Holliston office on two Fridays per month and work out in the field on the other Fridays.

19. After the Defendants received the letter from Plaintiff's physician concerning Plaintiff's disability and need for accommodation, the Defendants' agents treated Plaintiff differently and more harshly, including but not limited to, (1) excluding Plaintiff from meetings; (2) not returning Plaintiff's phone calls; (3) not providing Plaintiff with space, a desk, and/or a telephone on those Fridays when she worked in the Holliston office; and (4) treating and talking to Plaintiff in a harsh manner.

20. Upon learning that the Defendants were not going to accommodate Plaintiff's disability, Plaintiff's physician recommended that Plaintiff request intermittent FMLA leave whereby Plaintiff could continue her Friday therapy sessions, avoid exacerbating her condition with a fifth day of long drives, and remain relatively sedentary following the Friday therapy sessions to assist the healing process.

21. On or about November 16, 2001, Plaintiff submitted an application to Goldwell for intermittent FMLA leave; that is, Plaintiff requested to work a 4-day week beginning January 1, 2002. Plaintiff also submitted her physician's medical certification, along with her application.

22. Mary Garneau informed Renee Shakour that Plaintiff had requested FMLA forms and that she had applied for FMLA leave.

23. Goldwell required Plaintiff to get a second medical opinion about her condition within 30 days and provided her with the names of two health care providers.

24. Prior to Plaintiff's appointment with Goldwell's physician for a second medical opinion, Cheryl Holladay called Plaintiff away from a holiday in Vermont for a meeting in Holliston on December 27, 2001. Holladay told Plaintiff that the meeting was "mandatory" and that the purpose of the meeting was to "pick" Plaintiff's "brain" for the educational calendar in January.

25. Renee Shakour, Mary Garneau, Sheryl Holladay, and a Human Resources representative attended the meeting with Plaintiff. Renee Shakour told Plaintiff that her employment would end; Plaintiff's position was being dissolved and Plaintiff was no longer needed; and Plaintiff's performance had nothing to do with her termination. Renee Shekou offered Plaintiff the "opportunity" to do one show for the Defendants per year. Plaintiff requested that she be placed in a 3-day per week position for which she had been trying to make a hire. Renee Shekour responded that Plaintiff could not be hired into that part-time position.

26. Subsequent to Plaintiff's termination due to the "dissolution" of her position, the Defendants advertised the very same position, and a new Vice President was instructed to make hiring for the position a priority. Plaintiff's position was not eliminated, and Plaintiff was replaced by one or more employees who did not have a disability or a perceived disability and/or who did not request FMLA leave.

27.	On or about April 4, 2002, Plaintiff filed a complaint against the Defendants with the Massachusetts Commission Against Discrimination.

**Count I – Chapter 151B, § 4(16) – Failure to Accommodate a Disability**

28.	Plaintiff realleges, reaffirms, and incorporates by reference the facts and allegations contained in paragraphs 1-27.

29.	Plaintiff suffered from neck and back injuries sustained in a work-related vehicle accident, and Goldwell's Workers' Compensation insurer paid for Plaintiff's medical treatment. Pursuant to M.G.L. ch. 152, § 75B(1), Plaintiff's injury constituted a disability under M.G.L. c. 151B.

30.	Plaintiff's work-related injuries were exacerbated by a second vehicular accident for which Plaintiff required physical therapy and pain management treatments.

31.	Plaintiff's neck and back injuries interfered with the major life activity of driving long hours for more than four consecutive days.

32.	Plaintiff requested the reasonable accommodation of continuing to work Monday through Thursday out in the field and to work from her home on Friday to do administrative tasks and to receive ½ hour of physical therapy. This schedule had been agreed to by Goldwell at the time of Plaintiff's hire and reaffirmed by Goldwell and R.G. Shakour at the time of her promotion and joint employment by Goldwell and R.G. Shakour, beginning in April 2000. Plaintiff had worked this schedule for three years.

33. Instead of providing this reasonable accommodation or suggesting an alternative accommodation, the Defendants retaliated against Plaintiff for making the request by (1) requiring Plaintiff, for the first time, to work two Fridays per month in the Holliston office and to work out in the field the other Fridays; (2) compelling Plaintiff to request intermittent FMLA leave and loss of one day's pay per week; and then (3) terminating Plaintiff's employment under the pretext that her position had been eliminated.

34. The Defendants' failure to reasonably accommodate Plaintiff's disability and/or their retaliation because of Plaintiff's request was in violation of M.G.L. c. 151, § 4(16).

35. On account of the Defendants' failure to reasonably accommodate Plaintiff's disability and their retaliation against her for making the request, Plaintiff suffered lost wages and a loss of future earning capacity, a loss of employment benefits both past and future, a loss of medical benefits, and physical and emotional pain for which she seeks compensation.

### Count II – Chapter 151B – Discrimination Based on Disability and/or Perceived Disability

36. Plaintiff realleges, reaffirms, and incorporates by reference the facts and allegations contained in paragraphs 1-35.

37. Plaintiff, at all times, was able to perform the essential functions of her job by working her assigned schedule of Monday through Thursday out in the field

and Friday in her home office. This assigned schedule also enabled Plaintiff to receive ½ hour of physical therapy on Fridays.

38. After Plaintiff told Mary Garneau that she would have to reschedule a therapy session in order to make a Friday meeting in the Holliston office, Garneau asked Plaintiff questions about her disability and/or her therapy. Garneau immediately informed Renee Shakour, Plaintiff's supervisor at R.G. Shakour, that Plaintiff was a liability to the company and the company had to protect itself. Garneau also told Plaintiff that she was a liability to the Defendants.

39. Upon learning about Plaintiff's disability and/or her therapy sessions, the Defendants' agents discriminated against Plaintiff and treated her disparately and more harshly. These discriminatory acts included: (1) Leaving Plaintiff out of meetings; (2) failing to return her phone calls; (3) requiring Plaintiff to work in the Holliston office two Fridays per month and out in the field the other Fridays; (4) not providing Plaintiff with any office space, desk, or telephone in the Holliston office; (5) terminating Plaintiff's employment on December 27, 2001, under the pretext that her position had been eliminated; and (6) refusing to hire Plaintiff for the available 3-day per week position.

40. Contrary to the Defendants' representation, Plaintiff's position was not eliminated; the Defendants advertised Plaintiff's position after her termination; the new Vice President was instructed to fill the position as a priority; and Plaintiff was replaced in the position of Artec Brand Manager.

41.   The Defendants' discriminatory treatment against Plaintiff based on her disability and/or perceived disability was in violation of M.G.L. c. 151B, § 4(16).

42.   On account of the Defendants' discriminatory and egregious treatment of Plaintiff, based on her disability and/or perceived disability, Plaintiff suffered lost wages and bonuses and a loss of future earning capacity, a loss of employment benefits both past and future, a loss of medical benefits, and physical and emotional pain for which she seeks compensation.

### Count III – 29 U.S.C § 2611 *et seq.* – Family Medical Leave Act

43.   Plaintiff realleges, reaffirms, and incorporates by reference the facts and allegations contained in paragraphs 1-42.

44.   Both Goldwell of New England, Inc. and R.G. Shakour, Inc. are employers under the FMLA and are subject to its provisions.

45.   The physical injuries sustained by Plaintiff from two vehicle accidents, and the attendant pain and difficulty driving a vehicle long distances on more than four consecutive days, constituted a serious health condition.

46.   Under the Family Medical Leave Act, Plaintiff was entitled to take up to twelve weeks of intermittent medical leave.

47.   On or about November 9, 2001, Plaintiff requested intermittent FMLA leave, effective January 1, 2002, and she submitted her doctor's certification for the leave.

48.   Goldwell required that Plaintiff obtain a second medical opinion from one of two doctors whose names Goldwell provided.

49. After Plaintiff requested FMLA leave, and prior to her medical examination by Goldwell's doctor, the Defendants terminated Plaintiff's employment under the pretext that her position had been eliminated.

50. The Defendants' termination of Plaintiff's employment constituted interference with her rights under the FMLA, discrimination under the Act, and/or a violation of 29 U.S.C. § 2611 *et seq.*

51. On account of the Defendants' violation of the FMLA, Plaintiff suffered lost wages and a loss of future earning capacity, a loss of employment benefits both past and future, a loss of medical benefits, and physical and emotional pain for which she seeks compensation.

   WHEREFORE, Plaintiff demands that this Court order:

   a) That the Defendants compensate the Plaintiff for any loss of wages, bonuses, and/or benefits incurred as a result of its unlawful treatment of the Plaintiff;

   b) that the Plaintiff be awarded an amount of money which will fairly compensate her for her emotional and physical pain and suffering;

   c) that the Defendants pay the Plaintiff costs and attorney's fees resulting from this action;

   d) that the Defendants be ordered to pay the Plaintiff punitive damages;

   e) that the Defendants be ordered to pay the Plaintiff exemplary damages;

   f) that the Defendants pay the Plaintiff interest on any judgment entered from the time of the filing of this suit; and

   g) such relief as may be just and proper and/or which will make

the Plaintiff whole.

**The Plaintiff requests a Jury Trial on All Issues and Causes of Action Contained in this Complaint.**

                                         Jeanne Degan
                                         By her Attorneys,

                                         Kevin G. Powers, BBO #405020
                                         Linda Evans, BBO #635078
                                         Rodgers, Powers & Schwartz LLP
                                         18 Tremont Street
                                         Boston, MA 02108
                                         (617) 742-7010

First AmendedComplaint

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 3/14/05.

_Linda Evans_

13