# EXHIBIT A



Bowditch
& Dewey
ATTORNEYS

311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Telephone: (508) 791-3511
Facsimile: (508) 756-7636

*www.bowditch.com*

*Bowditch & Dewey, LLP*

Direct Telephone: (508) 926-3434
Direct Facsimile: (508) 929-3049
E-Mail: jsigel@bowditch.com

June 26, 2002

**VIA FEDERAL EXPRESS**

Sunila Thomas-George, Esq., Supervisor
Attorney Assisted Unit
Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place
Boston, MA 02108

Re:    *Jeanne Degan-Hogan v. Goldwell of New England, Inc.*
       *MCAD Docket No. 02BEM01435*

Dear Attorney Thomas-George:

        The following constitutes the Statement of Position of Respondent Goldwell of New
England, Inc. ("Goldwell") in response to the Complaint filed in this matter.

        In her Complaint, Complainant alleges that she was discriminatorily discharged on the
basis of her alleged disability (which is not identified anywhere in her Complaint) and/or because
of her request for accommodation and leave under the federal Family and Medical Leave Act
("FMLA"). Goldwell denies these allegations and asserts affirmatively that Complainant's
employment terminated for a legitimate, nondiscriminatory reason – namely, the Company's
elimination of her position. Furthermore, despite receiving conflicting reports regarding
Complainant's medical status (including medical reports indicating that she had no work
restrictions), Goldwell provided accommodation for her medical condition.

## BACKGROUND

        Goldwell and its affiliated company, R.G. Shakour, Inc. (collectively "the Companies"),
distribute hair care products (including products manufactured by ARTec Systems Group, Inc.
("ARTec")) to hair salons throughout New England and parts of New York. Goldwell's

Sunila Thomas-George, Esq., Supervisor
June 26, 2002
Page 2


principal place of business is located in Holliston, MA. On or about August 31, 1998, Goldwell hired Complainant to perform the position of "ARTec Brand Manager," which position she held throughout her employment by Goldwell. Beginning in April 2000 and continuing through the end of her employment, Complainant also provided services as ARTec Brand Manager to R.G. Shakour.[1]  Complainant reported to Sheryl Holladay, Goldwell's Director of Education, regarding her work for Goldwell; Complainant reported to R.G. Shakour's President, Renee Shakour, regarding her work on behalf of R.G. Shakour.

As ARTec Brand Manager, Complainant held responsibility for developing sales of ARTec products, conducted training classes about ARTec products at various salons, and managed the Goldwell and R.G. Shakour subcontractors who also conducted such training. One of Complainant's most important job duties was the production and administration of various paperwork regarding the training classes conducted by subcontractors. In that regard, Complainant was required to prepare salon evaluations, class evaluations, "detailing" reports and weekly calendars, and then submit those documents directly to ARTec on a weekly basis. She was required to submit other paperwork, such as monthly calendars, to ARTec on a monthly basis.

## RESPONSE TO PARTICULARS OF COMPLAINT

Goldwell responds to the particulars of Complainant's Complaint (which are set forth in "Attachment A" to the Complaint) as follows:

1.    Goldwell admits the allegations contained in Paragraph 1 of Attachment A.

2.    Goldwell admits the allegations contained in Paragraph 2 of Attachment A.

3.    Goldwell admits that Complainant filed a workers' compensation claim in connection with neck and back injuries she sustained during a June 15, 1999 automobile accident. (On the day after the accident, Complainant returned to work at full duty.) In any event, Goldwell's workers' compensation insurer, CNA Insurance ("CNA"), compensated Complainant for some treatment related to those injuries. However, CNA refused to pay for acupuncture and other treatments Complainant received in 2001 because, based upon its review of the medical records it had received, CNA concluded that such treatments were not reasonable, necessary or causally related to any work-related accident.

---

[1]    Complainant received all of her compensation and benefits from Goldwell throughout her employment; R.G. Shakour reimbursed Goldwell for Complainant's services to R.G. Shakour.

Sunila Thomas-George, Esq., Supervisor
June 26, 2002
Page 3

    4.    Based upon Goldwell's review of the various medical records concerning
Complainant's medical condition during the several months preceding the end of her
Employment (including CNA's denial of benefits), Goldwell submits that the relationship
between that medical condition and the injuries she sustained in her June 1999 car accident
remains uncertain. Therefore, Goldwell denies that Complainant is or was a qualified
handicapped person pursuant to M.G.L. c.152, §75B(1), during the period of time which is
relevant to her Complaint.

    5.    Goldwell denies that the only accommodation Complainant sought was
permission to attend physical therapy sessions on Fridays and to work at home on those days.
Specifically, in November 2001, Complainant requested Family and Medical Leave Act
("FMLA") leave to allow her to reduce her work schedule from five days to four days per week
for an indefinite period of time. At that time, Complainant did not request to work at home on
Fridays but, rather, requested not to work at all on one day each week. Furthermore, none of the
medical documentation which Goldwell received regarding Complainant indicated that she
needed to work at home on Fridays "for the purpose of saving [her] from driving after [her]
physical therapy," as Complainant alleges in paragraph 5 of Attachment A.

    6.    Beginning in or about April 2000, Complainant regularly worked at her home on
Fridays to perform some of her duties, including her paperwork – not because of any medical
condition or treatment. (The Companies and ARTec required Complainant to visit salons and
attend training classes from Monday through Thursday each week.)

    In August 2001, ARTec's Director of Education, David Bakey, informed Goldwell's
Director of Education, Ms. Holladay, that ARTec believed Complainant had falsified documents
that she had submitted to ARTec. (See Exhibit A.) Specifically, in response to a written request
for reports and evaluations which Complainant had failed to submit, Complainant sent to ARTec
reports and evaluations which were identical to those she had previously submitted. ARTec
reviewed the documents and determined that identical documents had been submitted, but that
the dates had been altered. Based upon ARTec's dissatisfaction with Complainant's paperwork
and its conclusion that she had falsified documents, ARTec withheld payment of $14,000 which
it owed to Goldwell.

    As a result of these issues, on or about October 3, 2001, Ms. Holladay requested that
Complainant work in Goldwell's office on Friday, October 5, 2001, so that Goldwell could
provide Complainant with clerical assistance and help her streamline her processing of ARTec
paperwork. In response to that request, on October 3, 2001, Complainant reported to Goldwell
(specifically, to Mary Garneau, Controller and Internal Company Manager) for the first time that,
because of pain she attributed to her June 15, 1999 car accident, she was restricted from driving a
car for more than one and a quarter hours at a time. Complainant informed Ms. Garneau that

Sunila Thomas-George, Esq., Supervisor
June 26, 2002
Page 4

because travel from her home to Goldwell's office required her to drive two hours each way, it
would be a problem for her to report to Goldwell on October 5. Ms. Garneau informed
Complainant that Goldwell was unaware that Complainant had any medical restrictions and that
there was no documentation regarding any such restrictions in her personnel file. Ms. Garneau
then asked Complainant to ask her doctor to send Goldwell documentation regarding her medical
restrictions, and Complainant agreed to do so.

On October 4, 2001 Goldwell had not yet received the requested medical documentation
from Complainant or her doctor. At that time, Ms. Garneau informed Complainant that she had
contacted Rhonda Greenough, a CNA Claims Specialist, to ensure that Goldwell was not missing
any medical documentation regarding Complainant's medical status. Ms. Garneau explained to
Complainant that CNA's file contained no indication that Complainant was subject to any
restrictions on her driving. During that conversation, Complainant told Ms. Garneau that this
matter had been "blown out of proportion," that she had not refused to report to Goldwell's
facility on October 5, and that she would do so.

Complainant reported to Goldwell's facility on October 5, and Ms. Garneau assisted her
with and corrected mistakes in her paperwork. At that time, Complainant informed Ms. Garneau
that she had an appointment with a physician later that day for acupuncture treatment. That same
day, Complainant also attended a meeting with Ms. Garneau, Ms. Holladay and John Foundas,
Goldwell's President and Owner. Complainant reiterated the driving restrictions she had
mentioned to Ms. Garneau on October 3. Mr. Foundas informed Complainant that Goldwell
needed her to work at Goldwell's offices on each Friday and he explained the underlying
reasons. Specifically, he explained that management needed to have more involvement with
Complainant's paperwork until ARTec would agree to accept computerized reports. Mr.
Foundas stated that ARTec would not pay amounts it owed Goldwell because of paperwork it
had not received from Complainant and that the altered duplicate paperwork which Complainant
had submitted to ARTec had compromised Goldwell's ability to recover the $14,000 which
ARTec owed Goldwell.[2] They also discussed Complainant's medical status, and Complainant
was instructed not to drive to Goldwell for her scheduled meeting on October 8 until Goldwell
received medical verification of her work restrictions. In any event, Complainant was permitted
to leave work immediately following that meeting to attend her medical appointment.

On October 8, 2001, Complainant informed Ms. Garneau that she did not, in fact, have
any work restrictions, that the driving restriction she had reported to Goldwell during the
previous week was merely a "guide" that she followed and that her doctors had only been
"discussing" the restriction. This contradicted Complainant's previous statements to Goldwell in
which she indicated that she was currently subject to medical restrictions on her driving. At that

---

[2]    Complainant was subsequently given a written warning regarding her deficient and inaccurate paperwork.

Sunila Thomas-George, Esq., Supervisor
July 26, 2002
Page 5


time, Complainant informed Ms. Garneau for the first time that she would be receiving therapy
for her condition on <u>every</u> Friday.

On October 9, 2001, Complainant sent Goldwell a note dated October 9, 2001 from Dr.
Jan Slezak, in which he stated: "She is capable of resuming her regular schedule, but to take her
out of her Friday therapy and add 16 hours/month of driving would not be advisable at this
time." (See **Exhibit B**.) On or about October 19, 2001, Goldwell received a letter dated October
17, 2001 by Dr. Slezak, in which he stated: "I would advise only in necessary situations should
[Complainant] add a 5[th] day a week of driving instead of 4 days a week to her schedule."
However, Dr. Slezak also stated: "There are no restrictions for [Complainant] and [she] is fully
functional." (See **Exhibit C**.)

On October 22, 2001, Complainant attended a meeting with Ms. Garneau, Ms. Holladay
and a R.G. Shakour Human Resources representative. At that meeting, Ms. Garneau explained
to Complainant that Goldwell needed more specific information regarding her medical status
because the documentation from Dr. Slezak was internally inconsistent and not sufficiently
explicit. For example, Dr. Slezak indicated that "long periods of driving at a time" aggravated
her neck and back but he did not explain what that meant. (See Exhibit C.) Complainant's
Monday through Thursday work schedule often required her to drive long distances in a single
day, including distances that required more driving time than that required for travel from
Complainant's home to Goldwell's facility in Holliston. Moreover, in the very same letter, Dr.
Slezak stated that Complainant had <u>no restrictions</u>. In total, Goldwell had been left with
insufficient information to understand the accommodations (if any) required by Complainant.

Despite the fact that Goldwell had received contradictory and confusing information from
both Complainant and her doctor regarding her medical status, Goldwell informed Complainant
that it would attempt to accommodate her by requiring her to spend only <u>two</u> Fridays each month
working at Goldwell's facility. On the other Fridays of each month, Complainant would be
required to travel with salespeople to salons which were in close proximity to Complainant's
home. For travel on those days, the salespeople – not Complainant - could drive the cars, if
necessary. At the meeting, Complainant did not object to the new work schedule. Furthermore,
Complainant subsequently worked at Goldwell's offices on two consecutive Fridays (i.e.,
October 27 and November 3) even though she had not been required to do so. Likewise, on
Friday, November 9, 2001, Complainant traveled to work in Burlington, Vermont (which was
not in close proximity to her home) despite that fact that the Companies had not required her to
do so.)

In any event, after Complainant's conversation with Ms. Garneau on October 3, 2001, the
Companies allowed Complainant to leave early to attend her treatment sessions whenever she
requested, including on the Fridays she worked at Goldwell. Complainant's revised work

Sunila Thomas-George, Esq., Supervisor
June 26, 2002
Page 6

schedule remained in place until the Company received further documentation from
Complainant's doctor – i.e., a FMLA medical certification – in early December 2001.

Goldwell believed (and still maintains) that, under all of the circumstances, the
accommodations which were provided to Complainant were more than reasonable.

7.    Goldwell denies the allegations contained in Paragraph 7 of Attachment A.

8.    Goldwell denies that it received Complainant's FMLA medical certification on
November 16, 2001, but admits that it received that document at the beginning of the next
month.

9.    In the medical certification, Dr. Slezak indicated that Complainant was limited to
driving only four days per week, but he did not explain how Complainant's condition or
treatment now prevented her from performing any work on one day each week for an indefinite
period. (See **Exhibit D**.) Goldwell admits that, pursuant to FMLA regulations, it required a
second medical opinion by a doctor of its own choosing because Goldwell questioned the
validity of Dr. Slezak's medical certification, which, like his earlier reports, was not sufficiently
explicit. In addition, the document contained an entry which was apparently written by
Complainant – not Dr. Slezak. In any event, subject to the second medical opinion (which was
not obtained prior to Complainant's termination), Goldwell granted Complainant's request for
FMLA leave and allowed her to work only four days per week for the remainder of her
employment. Moreover, despite the fact that Dr. Slezak's medical certification did not specify
that Complainant's FMLA leave be taken on Fridays or any particular day of the week, Goldwell
granted Complainant's request to take the leave time on Fridays.

It is noteworthy that, after Goldwell informed Complainant that her FMLA leave was
granted but would be unpaid (i.e., other than the paid vacation days she had available), and
despite Dr. Slezak's representation that she was medically restricted from working more than
four days per week, Complainant voluntarily chose to work five days (including Friday) during
the week of December 10, 2001. (See **Exhibit E**.)

10.    Goldwell admits that on December 27, 2001, it informed Complainant that her
employment was terminated because the ARTec Brand Manager position had been eliminated.
Goldwell management had discussed the possibility of eliminating that position since August
2001 when Goldwell became especially concerned with the increasing amounts it was spending
on product education. At the same time, ARTec product sales were not increasing. At the
termination meeting, Complainant agreed that sales of ARTec products were not growing. Ms.
Shakour explained that, as a result, the Companies no longer needed an ARTec Brand Manager –
i.e., an employee who was primarily responsible for coordinating ARTec product training. At

Sunila Thomas-George, Esq., Supervisor
June 26, 2002
Page 7


that meeting, Complainant was offered a position as a subcontractor to conduct ARTec product training. Complainant declined to accept that offer. Prior to Complainant's termination, ARTec had been informed of the decision to eliminate the Brand Manager position and had no objection.

11.    Goldwell denies the allegations contained in Paragraph 11 of Attachment A. Furthermore, Goldwell respectfully submits that Complainant's claim alleging a violation of the FMLA must be dismissed because the Commission does not have jurisdiction over claims under the FMLA. See 804 C.M.R. 1.02.

## CONCLUSION

Goldwell adamantly denies that it discriminated against Complainant on the basis of her medical condition or because she requested accommodation and/or FMLA leave. As discussed above, Goldwell prudently and legitimately scrutinized Complainant's requests first to remain working at home on Fridays and then to completely cease working on Fridays for an indefinite period. Despite the Companies' business needs and the insufficient and conflicting medical reports provided by Complainant, Goldwell made significant efforts to work with Complainant and did, in fact, provide reasonable accommodation.[3]

Goldwell's decision to termination Complainant was based upon a legitimate, nondiscriminatory reason – i.e., her position elimination.

For the foregoing reasons, Respondent Goldwell of New England, Inc. respectfully submits that the Commission should issue a finding of lack of probable cause and dismiss Complainant's Complaint.

---

[3]    Even considering the facts in the light most favorable to Complainant, it is evident that her medical condition does not constitute a "disability" under state or federal law. Complainant herself does not allege in her Complaint that her condition substantially limited any major life activity.

Sunila Thomas-George, Esq., Supervisor
June 26, 2002
Page 8


Under the pains and penalties of perjury, the foregoing facts are true to the best of my knowledge, information and belief.


Mary M. Garneau
Controller and Internal Company Manager



Respectfully submitted,

GOLDWELL OF NEW ENGLAND, INC.

By its attorneys,



Jonathan R. Sigel, BBO# 559850
Renee E. Hackett, BBO# 640841
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511


JRS/bb

cc:     John Foundas, President and Owner, Goldwell of New England, Inc.
        Michael P. Angelini, Esq.
        Kevin G. Powers, Esq.

EXHIBIT A



S Y S T E M S    G R O U P ,    I N C.

FEDERAL EXPRESS

August 31, 2001

Cheryl Holiday
Essential Salon Products
375 Hopping Brook Road
Holliston, MA  01746

Re:  Jeanie Hogan

Dear Cheryl,

Enclosed please find a copy of my memo dated June 4, 2001, sent to Jeanie Hogan requesting missing paperwork. Also enclosed, is a copy of the requested documents submitted by Jeanie i.e., detailing reports, salon evaluations and team member evaluations along with a copy of the documents she originally submitted. As you can see, Jeanie falsified these documents by changing the dates.

We view these actions as an unacceptable and intolerable way of conducting business with our Brand Managers. Cheryl, I have sent the same letter to Renee Shakour so that we can immediately make a joint decision on how to resolve this matter. Please call me to schedule a conference call with you, Renee, Andrew and myself.

Thank you in advance for your cooperation.

Sincerely,

David Bakey
Director of Education

/db

enclosures

cc:  Andrew Bartfield and Brooke Carlson

<u>EXHIBIT B</u>

PO Box 1838
60 Rochester Hill Road Unit 8

*TO WHOM IT MAY CONCERN*

Rochester, NH 03866-1838
Rochester, NH 03867

Telephone: (603) 335-5800
Fax: (603) 885-5400

ASTEGHIK HACOBIAN, MD
DEA #BH 4514027

JAN SLEZAK, MD
DEA #BS 4240889

JAMES GUBEDDU, PA-C, MHP
DEA #MG 0036399

MANUEL SANCHEZ, MD
DEA #BS 1862211

## NORTHEAST PAIN CONSULTANTS

Name _Jeanne Hogan_    Date _10-9-01_

Address _____

℞ Patient has been seen and evaluated/treated
at our pain center since 1-5-01.
She is capable of resuming her regular
schedule, but take her out of her Friday
therapy and add 16 hours /month of driving
Work be would not be advisable at this time.

☐ Generic OK
☐ Label

Refill - 0 - 1 - 2 - 3 - 4 - PRN        _Jan Slezak_ ....... M.D.

Please—
Send Copies To: (All 3 Pages)
CC: Sheryl Holladay
     John Foundas
     Mary Garneau                    518.929.5049

I've copied Revel Shakaw



# Northeast Pain Consultants
### A Comprehensive Pain Treatment Center

**New Hampshire**
Rochester
Exeter
Gilford
Laconia

October 17, 2001

*(handwritten)* TO. MARY Garneau
CC Shenyl Holladay
CC John Founder

**Massachusetts**
Boston

To Whom It May Concern:

Jeanne Hogan has been a client at the Northeast Pain Clinic since January 5, 2001. She is still currently receiving weekly therapy approximately 30 minutes per session. I have made an exception for Jeanne to do her Fridays due to her schedule of being off the road and in her home office (I normally do not do acupuncture on Fridays).

There are no restrictions for Jeanne and she is fully functional. Jeanne would like to comply with her company's wishes concerning her work schedule on Fridays. However, to take her away from her weekly therapy and add another day of driving (approximately per day 4 hours) to her schedule would not be advisable at this time.

Although Jeanne has no restrictions and is fully functional, long periods of driving at a time aggravates her condition causing her neck and her back to be stiff and very uncomfortable. I would advise only in necessary situations should Jeanne add a 5th day a week of driving instead of 4 days a week to her schedule.

Three consecutive days off the road seem to give her the time needed to recuperate which is necessary at this time.

Sincerely,

Jan Slezak, MD

Certification of Health
Care Provider

(Family and Medical Leave Act of 1993)

U.S. Department of Labor

Employment Standards Administration
Wage and Hour Division

1. Employee's Name

Jeanne Degen-Hogan

2. Patient's Name (if different from employee)

3. The attached sheet describes what is meant by a **"serious health condition"** under the Family and Medical
Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check
the applicable category.

(1) ____ (2) ____ (3) ____ (4) _/_ (5) ____ (6) ____ , or None of the above _____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the
medical facts meet the criteria of one of these categories:

- degenerative cervical disc disease — as documented by MRI
- Clinical findings including decreased range of motion,
  presence of taut bands in cervical muscles,
  and positive neurological findings (see notes)

5.a. State the approximate **date** the condition commenced, and the probable **duration** of the condition (and
also the probable duration of the patient's present **incapacity**[2] if different):

since 6-15-1999 - (cause: car accident) Neck and down back injury

b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full
schedule** as a result of the condition (including for treatment described in Item 6 below)? _____

4 day work week

If yes, give the probable duration:

Indefinitely

c. If the condition is a **chronic condition** (condition #4) or pregnancy, state whether the patient is presently
incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

as above

6.a. If additional **treatments** will be required for the condition, provide an estimate of the probable number
of such treatments: undetermined — requiring treatment on
weekly to biweekly basis.

If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or
part-time basis, also provide an estimate of the probable number and interval between such treatments, actual
or estimated dates of treatment if known, and period required for recovery if any:

b. If any of these treatments will be provided by **another provider of health services** (e.g., physical
therapist), please state the nature of the treatments:

Acupuncture, massage therapy, psychotherapy
neurological evaluation and treatment as needed.

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is
taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular
daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

c.   If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

*same as 6 b*

7.a.   If medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work of any kind?** _____

b.   If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? _____ If yes, please list the essential functions the employee is unable to perform:

*limit driving to 4 days / week*

c.   If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

8.a.   If leave is required to **care for a family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation? _____

*N/A*

b.   If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery? _____

c.   If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

*Pain management practice*

_____
(Signature of Health Care Provider)

_____
(Type of Practice)

*68 Rochester Hill Rd*
*Rochester, NH 03867*
_____
(Address)

*603-335-5600*
_____
(Telephone number)

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____
(Employee Signature)

*11-30-01*
_____
(Date)

EXHIBIT E

Mary -

I will work on Friday the
14th of December.

I will take vacation DAYS
Dec. 21 and Dec 28

I will start my reduced
salary starts Jan 1st

Jeanne Hogan.