# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

Jeanne Degan-Hogan )
Complainant, )
)
v. )   MCAD No. 02 BEM D1435
)
Goldwell of New England Inc. )
Respondents. )

COMPLAINTANT JEANNE DEGAN-HOGAN'S
RESPONSE TO RESPONDENTS POSITION STATEMENT

I. UNDESPUTED FACTS

The complainant submits that in this case it is important to begin the analysis by considering what facts are not in dispute. The undisputed facts are:

1) The complainant began working for Goldwell of New England on or about August 31, 1998. During all relevant times she held the position of the Center Brand Manager. (See complaint Par 1 and response of Goldwell P2)

2) On June 15, 1999 the complainant was injured in a job related automobile accident. The complainant received medical treatment for back and neck injuries sustained in the accident (See complaint Par 2,3,4 and respondents admission regarding Par 2 and 3)

3) The complainant filed a Workers Compensation claim for work related injuries she sustained. The medical bills were paid for by the

compensation carrier with the exception of some acupuncture and massage therapy bills.

4) Despite the complainant's injuries she continued to perform her job. There is no issue raised by the respondent regarding the complainant's performances.

5) The complainant never received any negative performance reviews.

6) From the June 15, 1999 accident until December 27, 2000, the complainant continued to receive medical treatment related to her accident. (See complaint Par 6,7,8,9)

7) On December 27, 2001 the complainant was informed that her position was dissolved.

## II. THE COMPLAINTANT WAS HANDICAPPED

Chapter 152 § 75 (B) (1) states;

> "Any employee who has sustained a work related injury and is capable of performing the essential function of a particular job, or who would be capable of performing the essential function of such job with reasonable accommodation shall be deemed to be a qualified handicapped person under the provisions of CH 151B."

There is no dispute that the complainant sustained a work related injury on June 15, 1999, nor is there any dispute that despite her injuries she continued to perform her duties. The complainant therefore must be considered a handicapped person for the purpose of analyzing her claim under CH 151B.

## III. WAS THE COMPLAINANT LAID OFF ON ACCOUNT OF HER HANDICAP

### A. LEGAL STANDARD

The initial determination that the Commission is required to make is whether there is probable cause to believe a violation of CH 151B has occurred. In making this determination the Commission is governed by Rule 1.15 (7) (a), 804 CMR 115 (7) (a), which states, in part:

"In making this determination (of probable cause) disputes involving genuine issues of material fact are to be reserved for determination at the hearing"

## B. APPLICATION OF LEGAL STANDARD TO THE FACTS

There is a dispute whether the complainant's job function were ever eliminated. The complainant submits that the functions were not eliminated. In fact, Debra Wilson, who had only begun working for the company in June of 2001, is prepared to testify that she took over the complainant's duties and responsibilities in or about January 2002.

The complainant was well regarded and considered an important and valuable employee until she sought FMLA leave and accommodations to her handicapp.

In May of 2001, Renee Shakour gave the complainant a raise of $3,000.00 and commented that the complainant was doing an excellent job. In July of 2001, John Foundas stated at a sales meeting that he loved the complainant's ability to motivate the sales team and wished he could clone her. In or about July 31, 2001, Renee Shakour told the complainant that she was well organized and ran the territory well.

Renee Shakour always asked the complainant to train the new Brand Manager, which the complainant did. In or about August 21, 2001, Rene Shakour stated that she valued the complainant and hoped she would not leave the company.

The complainant's difficulties only began after she requested the accommodation of working at home on Fridays. See respondent EXHIBIT C. Prior to September 2001, the complainant and others worked from their home office on Fridays. After receiving the

complainant's doctor letter in support of her request for an accomodation the complainant was informed that the letter was not specific enough and that she would have to work the newly established schedule of no home office work.

On November 30, 2001 the complainant, fearing that the refusal of the company to allow her to work from home would disrupt her Friday therapy sessions, requested FMLA leave allowing her to take Fridays off. Disputes arouse between the parties about medical documentation and a second opinion was sought by the employer.

On December 27, 2001 complainant attended a meeting in which she was told the company was dissolving her position. Complainant was presented with a Proposal Settlement Agreement and Release. The complainant refused to sign, her company car keys were taken from her and she was sent home in a taxi.

Not only is there a dispute whether the complainant's position and/or duties were eliminated, but the fact that the complainant was laid off while a dispute was pending lends particular support to our position that the job elimination was a pretext for discrimination.

For all of the above reasons the complainant requests that the Commission issue a finding of probable cause and/or issue a discovery order.

IV.    MATERIAL FACTS IN DISPUTE

    A.    Respondent claims that CNA Insurance refused to pay for the Complainant's medical treatment in 2001 as not medically necessary and not related to a work injury.

5

The complainant disputes this assertion and submits it is a misrepresentation of fact. CNA disputed some of the medical bills submitted by the complainant. The complainant pursued her Workers Compensation Case against CNA and Goldwell. CNA was then ordered to pay the medical bills that were past due. That decision was then appealed by CAN.

      B.     DID THE COMPLAINANT ASK FOR A REASONABLE ACCOMODATION?

When the complainant first began working for Goldwell she was required to have a fully functional home office. All paperwork was done from her home office. The complainant traveled to the Corporate Office for Monday Sales Meetings and for Management Meetings.

In October 2001, the complainant was told that she was expected to work at the Corporate Office on Friday, however no office space, computer, answering machine or telephone was provided for the complainant's use.

There was no legitimate business reason for the complainant to drive to the Corporate Office on Fridays. Complainant also informed the company that she had therapy due to her work related injury and that requiring her to drive to the Corporate Office on the day of her therapy would interfere with her therapy. The only accommodation the complaint requested was that she be allowed, as she had done for years, to work from her home office on Fridays.

C.   DID MS. HOGAN FAIL TO PROVIDE OR PROVIDED MISINFORMATION TO ARTEC CAUSING ARTEC TO WITHOLD $14,000.00 IT OWED TO GOLDWELL?

Ms. Hogan disputes the company's characterization of her relationships with ARTEC. Ms. Hogan contends that she provided ARTEC with all appropriate documentation. The underlying issue was in fact, that David Bakey of ARTEC and Renee Shakour did not get along and that ARTEC owed the company close to $60,000.00 and was trying to find an excuse not to pay the money it owed Goldwell.

Ms. Hogan was specifically informed not to spend any more time responding to ARTEC's request for additional documentation. When Respondent Exhibit "A" was received by Cheryl Holiday, both Ms. Holiday and Renee Shakour told Ms. Hogan that she should disregard the letter and not provide any additional information to Mr. Bakey.

D.   WAS THE COMPLAINANT'S JOB ELIMINATED IN DECEMBER OF 2001?

In August of 2001, Renee Shakour told the complainant that ARTEC wanted to hire the complainant away from Goldwell, but that Ms. Shakour stated to complainant that she, the complainant, was, "too valuable to let go".

The complainant's job was never eliminated. In fact, David Hallgreen Ex Vice President of Goldwell will testify that he was informed, after the complainant was terminated, one of his job duties was to find and hire a Brand Manager. He will further testify that he hired a Brand Manager but that she was fired within a week.

In September of 2002, Renee Shakour announced in a meeting that the company was desperate to find a Brand Manager and that she would pay $500.00 to anyone who helped

her hire one. At the same meeting, Viki Bruton, Regional Sales Manager said that Goldwell had been looking for an ARTEC Brand Manager since January 2002 and that the company was desperate to find one.

### E. WAS THE COMPLAINANT OFFERED A SUB-CONTRACTING JOB?

The complainant asked if she could take part time educational subcontractor position that the complaint was trying to fill at the time of her termination. This request was specifically rejected by Renee Shakour. Sheryl Hollady then told the complainant that she could work a show when needed, because this meant a maximum of 3 days of work a year, this was rejected by the complainant.

In light of the material facts which are in dispute and which have been identified above the complainants submits that a finding of Probably Cause should be entered by the Commission.

KEVIN G. POWERS
BBO #405020
ROBERT S. MANTELL
BBO #559715
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, Massachusetts 02108
(617) 742-7010

Hogan, Jeanne\MCAD Response.doc

# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

BOSTON                                        DOCKET NO. 02BEM01435

```
JEANNE DEGAN-HOGAN,              )
                                 )
        Complainant,             )
                                 )
v.                               )
                                 )
GOLDWELL OF NEW ENGLAND, INC.,   )
                                 )
        Respondent.              )
```

### RESPONDENT GOLDWELL OF NEW ENGLAND, INC.'S RESPONSE TO COMPLAINANT'S FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS FOR DOCUMENTS

Respondent Goldwell of New England, Inc. ("Goldwell" or "the Company") responds to Complainant's Interrogatories as follows.

#### GENERAL OBJECTIONS/RESPONSE

1. Goldwell objects to each and every interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

2. Goldwell objects to each and every interrogatory to the extent that it purports to establish a continuing duty to supplement, or seeks to impose any duty, beyond those imposed by the Massachusetts Rules of Civil Procedure or applicable MCAD Regulations.

3. Goldwell objects to the time period covered by a number of the interrogatories (i.e., "1998 to the present") as overly broad.

4. Some interrogatories may be answered by reference to the option to produce business records in accordance with Mass.R.Civ.P.33(c). With respect to records or documents deemed confidential by Goldwell, Goldwell has identified such documents by marking them "Confidential," and they will be produced subject to an appropriate Confidentiality Agreement between the parties. Therefore, Goldwell is not raising specific confidentiality objections herein.

5.  Each of the General Objections shall be deemed to apply to each of the Complainant's separate interrogatories.

## RESPONSES TO INTERROGATORIES

1.  Please state your name, business address, title of the position you hold and state whether prior to answering these interrogatories you have made a due and diligent search of the Respondent's books, records and papers and a due and diligent inquiry of the agents and employees of the Respondent.

RESPONSE NO. 1:   Mary M. Garneau, Controller and Internal Company Manager; Goldwell of New England, Inc., 375 Hopping Brook Road, Holliston, MA 01746.

Yes.

2.  Describe in full the job duties and responsibilities of the job position(s) held by the Complainant with the Respondent.

RESPONSE NO. 2:   Complainant performed the position of "ARTec Brand Manager," which position she held throughout her employment by Goldwell. Beginning in April 2000 and continuing through the end of her employment, Complainant also provided services as ARTec Brand Manager to R.G. Shakour. As ARTec Brand Manager, Complainant held responsibility for developing sales of ARTec products, conducted training classes about ARTec products at various salons, and managed the Goldwell and R.G. Shakour subcontractors who also conducted such training. One of Complainant's most important job duties was the production and administration of various paperwork regarding the training classes conducted by subcontractors. In that regard, Complainant was required to prepare salon evaluations, class evaluations, "detailing" reports and weekly calendars, and then submit those documents directly to ARTec on a weekly basis. She was required to submit other paperwork, such as monthly calendars, to ARTec on a monthly basis.

3.  If the Respondents allege that the Complainant's job performance was a factor in its decision to layoff or terminate her, state each and every fact supporting the Respondent's contention, if it so contends, that the Complainant performed her job in an unsatisfactory manner. In response to this interrogatory, provide a description of all instances in which Complainant performed in an unsatisfactory manner, including

A.  a description of the instance;

2

B.     the date of the instance;
C.     the time and location that the instance took place;
D.     a full identification, including last known addresses and telephone numbers, of all individuals who witnessed each instance; and
E.     an identification of any document(s) relating to or describing the instance.

RESPONSE NO. 3:    Goldwell does not allege that Complainant's job performance was a factor in the Company's decision to terminate her employment.

4.    Identify each and every communication and document relating to Complainant and relating to

A.     whether Complainant was able or qualified to perform her job;
B.     whether Complainant had been satisfying the requirements of her job;
C.     whether Complainant had violated any policies of Respondent;
D.     whether Complainant should be warned, disciplined, and/or terminated; and
E.     Complainant's medical status.
F.     whether the Complainant met the companies [sic] goals, expectation or Quotas.

RESPONSE NO. 4:    Objection. This interrogatory is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows: See <u>Attachment 1</u> and documents produced in response to Request No. 2 of Complainant's First Request for Production of Documents.

5.    Identify each and every reason why Complainant was terminated or laid off. In response to this interrogatory, please also provide

A.     an identification of each and every fact on which Respondent relied in deciding to terminate or layoff Complainant;
B.     an identification of each and every individual with knowledge of the fact(s) on which Respondent relied in deciding to terminate or layoff Complainant.
C.     the identity of each person involved in the decision whether that person was employed by or a principal of Goldwell, Shakour or Artec.

RESPONSE NO. 5:    Objection. This interrogatory is overly broad, burdensome and vague. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows:

Complainant's employment was terminated because the ARTec Brand Manager position was eliminated. Goldwell management had discussed the possibility of eliminating that position since August 2001 when Goldwell became especially concerned with the increasing amounts it was spending on product education while, at the same time, ARTec product sales were not increasing.

The individuals who were involved in the decision to eliminate the ARTec Brand Manager position and layoff Complainant were John Foundas, Goldwell's President, Renee Shakour, President of Shakour, and Sheryl Holladay, formerly Goldwell's Director of Education.

Individuals with knowledge of the facts on which Goldwell relied in deciding to layoff Complainant include but are not necessarily limited to the following: Mary M. Garneau; John Foundas; Sheryl Holladay; Renee Shakour; and Brooke Carlson and Andrew Bartfield (both of whom are currently employed by L'Oreal in its ARTec Division).

6. For each job whether management or sales, that was filled from 8/1/1998 to the present provide job description, names of individuals interviewed for every job along with detailed description of their professional background.

RESPONSE NO. 6: Objection. This interrogatory is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows: See Attachment 2.

8. Was Jeanne Hogan the only employee that was laid off at that time of her layoff, if there were others please identify the others laid off during that time period.

RESPONSE NO. 8: Objection. This interrogatory is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows:

Complainant was the only ARTec Brand Manager at the time that the position was eliminated and, therefore, was the only employee laid off by Goldwell or Shakour at that time.

9. Identify all individuals terminated from 8/1/1998 to present and list all the reasons why said individuals were terminated.

RESPONSE NO. 9: Objection. This interrogatory is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows: See Attachment 3.

4

11. Identify all employees that filled Jeanne Hogan's position or took over any of her job duties, after her position was dissolved and state their backgrounds, who's [sic] decision it was to hire these people and why they were hired.

RESPONSE NO. 11: Objection. This interrogatory is overly broad, burdensome and vague. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows:

The clerical functions which had been performed by Complainant were assumed by Goldwell's accounting and internal educational staff. The class scheduling functions which had been performed by Complainant were assumed by Sheryl Holladay. Goldwell did not hire any employee to replace Complainant or perform any other duties which had been performed by Complainant.

12. Identify all 5 pregnant women terminated from Goldwell and reasons why they were terminated from Goldwell at the same time.

RESPONSE NO. 12: Objection. This interrogatory is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows:

Goldwell did not terminate five pregnant employees at the same time.

13. State each and every reason why Sarah Duffey [sic] was fired and give complete records of her reviews, sales, and any performance ratings.

RESPONSE NO. 13: Objection. This interrogatory is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows:

Sarah Duffy's employment with Goldwell was terminated for legitimate, non-discriminatory reasons – namely, because she became unable to perform the essential functions of her position (i.e., Account Executive).

14. Provide a full history report of Artec's numbers, sales and status from 8/1/98 to the present.

RESPONSE NO. 14: Objection. This interrogatory is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved

in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows: See <u>Attachment 4</u>.

15. Explain in detail why was Jeanne Hogan not offered another position within either company when and if openings became available.

<u>RESPONSE NO. 15</u>: Objection. This interrogatory is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds to this interrogatory as follows:

Neither Goldwell nor Shakour was under any obligation to offer Complainant another position within the companies, and Complainant did not apply for any other positions following her layoff. In any event, Goldwell did, in fact, offer Complainant a position as a subcontractor to conduct ARTec product training; Complainant declined to accept that offer.

Signed under the penalties of perjury this 14Th day of November 2003.

GOLDWELL OF NEW ENGLAND, INC.

By: _____
Mary M. Garneau
Controller and Internal Company Manager

Signed as to objections by its attorneys,

_____
Jonathan R. Sigel, BBO# 559850
Renee E. Hackett, BBO# 640841
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

{J:\CLIENTS\emp\071780\0100\hogan\00373968.DOC;1}

6

## RESPONSES TO DOCUMENT REQUESTS

Respondent Goldwell of New England, Inc. ("Goldwell" or "the Company") responds to Complainant's First Request for Production of Documents as follows. Inspection and copying, or production as the case may be, will be in such manner and at such time and place as the parties agree.

## GENERAL OBJECTIONS

Goldwell objects to Complainant's First Request for Production of Documents to the extent that it seeks information or documents which are subject to the attorney-client privilege or the work-product doctrine, documents relating to, referring to or containing trade secrets or other proprietary or confidential material, or information or documents that are otherwise not within the scope of discovery permitted by the Massachusetts Rules of Civil Procedure. By producing any information or document in response to any particular request, Goldwell does not waive any of its general or specific objections to that or any other request.

With respect to documents deemed confidential by Goldwell, Goldwell has identified such documents by marking them "Confidential," and they will be produced subject to an appropriate Confidentiality Agreement between the parties. Therefore, Goldwell is not raising specific confidentiality objections herein.

Goldwell objects to the time period covered by a number of the document requests - i.e., periods dating from August 1998 and earlier - as overly broad.

1. Any and all personnel policies, employee manuals, rules or regulations, organizational charts, or any other documents stating the Respondent's practice or procedures regarding any and all employment issues, including without limitation policies relating discipline, wages and benefits.

RESPONSE NO. 1: Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, inspection and copying of documents responsive to this request are enclosed herewith.

2. The Complainant's entire personnel file throughout the period from 1998 to the present including but not limited to any and all documents describing the job duties and responsibilities of the position held by the Complainant.

RESPONSE NO. 2: Inspection and copying of documents responsive to this request are enclosed herewith.

3. All documents identifying the person(s) or entity(ies) that own Respondent.

RESPONSE NO. 3: Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell states that 50% of Goldwell is owned by John Foundas, and the other 50% is owned by Jon Shakour.

4. Provide details including dates formal and informal notification of layoff, job elimination in writing or verbally, including all e-mails, meeting notes and or letters by anyone in management position of Humans [sic] Resource capacity for all employees at Goldwell, Shakour, and Artec from August 1998 - December 27, 2002.

RESPONSE NO. 4: Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Respondent further states that it has neither access nor any right to access any requested information or documentation regarding employees of ARTec. Notwithstanding this objection, and without waiving same, see Memorandum dated 1/4/02 from Mary Garneau to Complainant's personnel file, which is included in the documents produced in response to Document Request No. 2.

5. Provide copies of all correspondence between Artec, Goldwell and Shakour pertaining to hiring freeze, lay off, and cost reductions.

RESPONSE NO. 5: Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds as follows: Goldwell has not located any documents responsive to this request.

6. Provide any and all documents upon which Goldwell and Shakour and Artec relies on to support their contention that Jeanne Hogan was not a candidate for any other job openings.

RESPONSE NO. 6: Objection. Respondent does not contend that Complainant "was not a candidate for any other job openings."

7. Provide a complete list of all Account Executives and their Artec sales numbers from 8/1/1998 to the present from Goldwell and Shakour.

8

RESPONSE NO. 7:   Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, documents responsive to this request are included in the documents produced in response to Document Request No. 2.

8.   Provide Goldwell, Artec's and Shakour's job posting policy in effect during the relevant time period.

RESPONSE NO. 8:   Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds as follows: Neither Goldwell nor Shakour has any written job posting policies. Respondent further states that neither Goldwell nor Shakour has access or any right to access any requested information or documentation regarding ARTec.

9.   All correspondence to Jeanne Hogan referencing that Sales were down and the Brand Manager position was in trouble.

RESPONSE NO. 9:   Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds as follows: Goldwell has not located any documents responsive to this request.

10.   List all discussions and written documentation of rehiring an Artec Brand Manager.

RESPONSE NO. 10:   Objection. This request is improper in the context of a Request for Production of Documents, overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, Goldwell responds as follows: There is no documentation responsive to this request because neither Goldwell nor Shakour has hired an employee to perform Complainant's former position – i.e., ARTec Brand Manager - since Complainant's layoff.

11.   Provide copies of all Lawsuits brought against Goldwell Artec, and Shakour for discrimination in the last 15 years.

RESPONSE NO. 11: Objection. This request is improper, overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Respondent further states that neither Goldwell nor Shakour has access or any right to access any requested information or documentation regarding ARTec.

12. Any and all documents, which reference, identify or discuss the decision to dissolve Jeanne's position, including but not limited to;

a. Documents which identify the amount of money Shakour, Artec and Goldwell needed to cut from its entire budget during the time Jeanne was let go.
b. Business plans showing planned and actual cost reductions that were made after the position was dissolved.

RESPONSE NO. 12: Documents responsive to this request are included in the documents produced in response to Document Request No. 2.

13. Provide a full report of each Account Executives Artec numbers from both companies from 8/1/98 to the present.

RESPONSE NO. 13: Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, see response to Document Request No. 7 above.

14. Furnish all correspondence, including e-mail, meeting notes between, Renee Shakour and Mary Garneau, Mary Garneau and Sheryl Holladay, Sheryl Holladay and John Foundas, John Foundas and John Shakour, Renee Shakour and Human Resource group from Shakour, Renee Shakour with John Foundas, Renee Shakour with John Shakour, Any and all Artec staff with Renee Shakour, which reference, discuss or identify dissolving or eliminating the position of Artec Brand Manager.

RESPONSE NO. 14: Objection. This request is overly broad, burdensome and vague and seeks information which is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, and without waiving same, see response to Document Request No. 12 above.

GOLDWELL OF NEW ENGLAND, INC.

By its attorneys,

_____
Jonathan R. Sigel, BBO# 559850
Renee E. Hackett, BBO# 640841
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Dated: November 14, 2003

### CERTIFICATE OF SERVICE

I, Jonathan R. Sigel, hereby certify that I have served a copy of the foregoing by mailing same, postage prepaid this 14th day of November 2003 to the following:

Kevin G. Powers, Esq.
Rodgers, Powers & Schwartz, LLP
18 Tremont Street
Boston, MA 02108

_____
Jonathan R. Sigel

11