UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEANNE DEGAN,<br><br>    Plaintiff,<br><br>v.<br><br>GOLDWELL OF NEW ENGLAND,<br>INC. and R.G. SHAKOUR, INC.,<br><br>    Defendants. | CIVIL ACTION NO. 04CV11024 RWZ<br><br>Jonathan R. Sigel<br>BBO# 559850 |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Goldwell of New England, Inc. ("Goldwell") and R.G. Shakour, Inc. ("Shakour") (collectively herein "Defendants") submit the following Memorandum of Law in Support of their Motion for Summary Judgment on all counts of Plaintiff's Amended Complaint.

### SUMMARY OF PERTINENT FACTS

Goldwell and Shakour distribute hair care products (including products manufactured by ARTec Systems Group, Inc. ("ARTec")) to hair salons throughout New England and parts of New York. Goldwell's principal place of business is located in Holliston, Massachusetts.

On or about August 31, 1998, Goldwell hired Plaintiff to perform the position of "ARTec Brand Manager," which position she held throughout her employment by Goldwell; beginning in April 2000 and continuing through the end of her employment, Plaintiff also provided services as ARTec Brand Manager to Shakour. (*Ex.1*, Degen Dep. at 65-66.)(*Ex.2*, Shakour Dep. at 29.) Plaintiff reported to Goldwell's Director of Education, Sheryl Holladay, regarding her work for Goldwell; Plaintiff reported to Shakour's Vice President, Renee Shakour, regarding her work on behalf of Shakour. (*Ex.2*, Shakour Dep. at 51.)

As ARTec Brand Manager, Plaintiff was responsible for developing sales of ARTec products, conducting training classes about ARTec products at various salons, and managing the Goldwell and Shakour subcontractors who also conducted such training. (*Ex.1*, Degen Dep. at 66.) One of Plaintiff's most important job duties was the production and administration of various paperwork required by ARTec. Plaintiff generally visited salons and attended training classes Monday through Thursday each week; during calendar year 2001 (and even earlier in her employment) Plaintiff regularly worked at her home on Fridays to perform some of her duties, including her paperwork. (Such work at home was Plaintiff's preference - it was not because of any medical condition or treatment.) (*Ex.1*, Degen Dep. at 137 & 166.)

Plaintiff's Work-Related Accident

On or about June 15, 1999, Plaintiff was involved in a work-related automobile accident. Plaintiff returned to work at full duty on the day after the accident and did not request any accommodations in connection with the accident. (*Ex.1*, Degen Dep. at 103-104.) Plaintiff filed a Workers' Compensation claim in connection with neck and back pain that she attributed to the accident, and Goldwell's workers' compensation insurer, CNA Insurance ("CNA"), compensated Plaintiff for some treatment related to those injuries. (*Ex.1*, Degen Dep. at 106.) However, CNA refused to pay for acupuncture and other treatments Plaintiff received in 2001 because it concluded that such treatments were not reasonable, necessary or causally related to any work-related accident. (*Garneau Affidavit*, Attachment B.)(*Ex.1*, Degen Dep. at 106.)

Plaintiff appealed CNA's decision to the Compensation Appeals Board of the State of New Hampshire. (*Ex.1*, Degen Dep. at 106-107.) After an evidentiary hearing on the merits, the Appeals Board held that, by August 2001, Plaintiff "had recovered from her work related injury and was experiencing symptoms caused by other factors." (*Garneau Affidavit*, Attachment B.) Accordingly, the Appeals Board affirmed CNA's denial of benefits because Plaintiff could not demonstrate that

"the medical treatment she received after August 2001 was causally related to her June 15, 1999 work-related injury." (*Garneau Affidavit*, Attachment B.)

### Complaint By ARTec

In August 2001, ARTec's Director of Education, David Bakey, informed Defendants that ARTec believed Plaintiff had "falsified" documents that she had submitted to ARTec by "changing the dates" on the documents. (*Ex.4*)(*Ex.1*, Degen Dep. at 153.) Based upon ARTec's dissatisfaction with Plaintiff's paperwork and its conclusion that she had falsified documents, ARTec withheld payment of $14,000 which it owed to Goldwell. (*Garneau Affidavit* ¶5.) As a result of these issues, on or about October 3, 2001, Defendants requested that Plaintiff work in Goldwell's Holliston office on Friday, October 5, 2001, so that she could use Goldwell's clerical assistance and ensure correct processing of ARTec paperwork. (*Ex.3*, Foundas Dep. at 101.)(*Ex.2*, Shakour Dep. at 103.)(*Ex.1*, Degen Dep. at 175-176.)

### Plaintiff's Request for Accommodation and/or FMLA Leave

Following Defendants' request that Plaintiff report to the Goldwell office on Friday, October 5, 2001, Plaintiff reported to Goldwell for the first time that, because of pain she attributed to her June 15, 1999 car accident, she was receiving therapy and maintained a "guideline" of driving a car for no more than 1.5 hours at a time. (*Garneau Affidavit* ¶ 9.)(*Ex.1*, Degen Dep. at 81-82, 99-101.) Travel from Plaintiff's home to Goldwell's office required Plaintiff to drive two hours each way and, therefore, would violate this guideline. (*Ex.5*, Degen Dep. II at 47.) Ms. Garneau informed Plaintiff that Goldwell was unaware that Plaintiff was receiving therapy and that there was no documentation of any medical restrictions in her personnel file. (*Garneau Affidavit* ¶ 9.) Ms. Garneau then instructed Plaintiff to provide Goldwell with medical documentation regarding any work limitations or restrictions. (*Garneau Affidavit* ¶ 9.) Plaintiff agreed to do so, but told Ms. Garneau that she did not, in fact, have any work restrictions, and the 1.5 hour driving limitation was merely a "guideline." that she followed. (*Ex.1*, Degen Dep. at 81-82, 100.)

Plaintiff reported to Goldwell's facility on October 5th as requested, and Ms. Garneau reviewed ARTec paperwork with her. (*Ex.1*, Degen Dep. at 181.) That same day, Plaintiff also attended a meeting with Ms. Garneau, Ms. Holladay and John Foundas, Goldwell's President and Owner. (*Ex.1*, Degen Dep. at 183.) Mr. Foundas informed Plaintiff that Goldwell wanted her to work at Goldwell's offices (instead of at home) on each Friday because, in view of the problems that had arisen, management needed to have more involvement with Plaintiff's ARTec paperwork. (*Ex.1*, Degen Dep. at 183-184.) Plaintiff did not object to the revised schedule at that time. (*Ex.1*, Degen Dep. at 185.)

Following this meeting, Plaintiff twice provided Defendants with correspondence from her physician, Dr. Jan Slezak. Those notes generally stated that Plaintiff was "fully functional" but also contained conflicting information about her ability to drive:

1. <u>Physician's note dated October 9, 2001</u>: "She is capable of resuming her regular schedule, but to take her out of her Friday therapy and add 16 hours/month of driving would not be advisable at this time." (*Ex.6*)

2. <u>Physician's letter dated October 17, 2001 (received by Defendants on October 19, 2001)</u>:

"There are no restrictions for [Plaintiff] and she is fully functional. [Plaintiff] would like to comply with her company's wishes concerning her work schedule on Fridays. However, to take her away from her weekly therapy and add another day of driving (approximately per day 4 hours) to her schedule would not be advisable at this time.

Although [Plaintiff] has no restrictions and is fully functional, long periods of driving at a time aggravates her condition causing her neck and her back to be stiff and very uncomfortable. I would advise only in necessary situations should [Plaintiff] add a 5th day a week of driving instead of 4 days a week to her schedule." (*Ex.7*)

On October 22, 2001, Plaintiff attended a meeting with Ms. Garneau, Ms. Holladay and an R.G. Shakour Human Resources representative. (*Ex.1*, Degen Dep. at 132.) At that meeting, Ms. Garneau explained to Plaintiff that Goldwell needed more specific information regarding her medical status because the documentation from Dr. Slezak was unclear. (*Ex.1*, Degen Dep. at 196-197.) Defendants informed Plaintiff that, pending receipt of clarified medical documentation, they would

attempt to accommodate her "guidelines" by requiring her to drive to Goldwell's facility on only two Fridays each month; that is, Defendants agreed to reduce the expected additional driving from 16 to 8 hours per month. (*Ex.1*, Degen Dep. at 202-203.)[1]

In November 2001, Plaintiff (for the first time) requested "reduced schedule" FMLA Leave in the form of a 4-day workweek. (*Ex.8*) In connection with this request, Plaintiff submitted a "Certification of Health Care Provider" which stated both that: (1) the only limitation on Plaintiff's ability to perform the essential functions of the position was to "limit driving to 4 days per week"; and (2) Plaintiff should be on a 4-day workweek. (*Ex.9*) Defendants informed Plaintiff that they questioned the validity of this Certification because, *inter alia*, it was internally inconsistent as to whether Plaintiff was limited in her ability to work *at all* on a fifth workday or was limited only in her ability to *drive* on a fifth workday. (*Ex.9*)

On December 6, 2001, Defendants requested Plaintiff to obtain a second opinion regarding the medical necessity of working a 4-day week. (*Ex.10*)(*Ex.1*, Degen Dep. at 218-219.) Defendants expressly informed Plaintiff that she was permitted to work a 4-day week pending receipt of the second medical opinion. (*Ex.10*)(*Ex.1*, Degen Dep. at 220.) Thereafter, during every week of Plaintiff's employment, Defendants permitted her to take every Friday off. To the extent Plaintiff worked on any Friday after December 6th, such work was Plaintiff's *voluntary choice* and was *not required* by Defendants. (*Ex.1*, Degen Dep. at 219 & 222.) Moreover, Defendants allowed Plaintiff to leave early to attend her therapy whenever she requested, including on the Fridays she worked at Goldwell. (*Ex.1*, Degen Dep. at 208.)

<u>Elimination of the ARTec Brand Manager Position</u>

In August 2001, at or about the time that ARTec first asserted its claims of "falsification"

---

[1] On the other Fridays of each month, Plaintiff would be required to travel with salespeople to salons. For travel on those days, the salespeople – not Plaintiff - could drive the cars, if necessary.

04-11024-RWZ                        5

against Plaintiff, Defendants began to discuss the possibility of eliminating the ARTec Brand Manager position. (*Garneau Affidavit* ¶ 6.) At that time Defendants were concerned that ARTec education costs (including the cost of maintaining a Brand Manager) were increasing, while product sales were not. (*Id.*)(*Ex.2*, Shakour Dep. at 65.) During May through November 2001, ARTec sales leveled-off and Defendants were not meeting their ARTec sales goals. (*Garneau Affidavit* ¶ 4.)(*Bartfield Affidavit* ¶ 4.)(*Ex.3*, Foundas Dep. at 94-95.) After discussing their concerns with ARTec representatives in December 2001, Defendants decided to eliminate the position because the lack of sales did not justify the expense of maintaining an ARTec Brand Manager. (*Ex.3*, Foundas Dep. at 32, 79.)(*Ex.2*, Shakour Dep. at 136.)(*Garneau Affidavit* ¶¶ 6-7.)

On December 27, 2001, Defendants informed Plaintiff that her employment was terminated because the ARTec Brand Manager position had been eliminated. (*Ex.1*, Degen Dep. at 234.) At that meeting, Defendants offered Plaintiff a part-time educator position, which Plaintiff declined. (*Ex.2*, Shakour Dep. at 146.)(*Ex.1*, Degen Dep. at 238-239.) Defendants did not hire anyone to replace Plaintiff in the position of ARTec Brand Manager. (*Ex.3*, Foundas Dep. at 86.)(*Garneau Affidavit* ¶ 8.)(*Bartfield Affidavit* ¶ 6.)

## PROCEDURAL HISTORY

On April 27, 2002, Plaintiff filed a complaint against Goldwell at the Massachusetts Commission Against Discrimination ("MCAD") alleging discriminatory termination of employment on the basis of handicap. In February 2004, before the MCAD issued a determination, Plaintiff removed her complaint from the MCAD for the purpose of filing a civil action. On or about April 15, 2004, Plaintiff filed a complaint against Goldwell in the Superior Court Department of the Massachusetts Trial Court, alleging four counts of unlawful conduct: Count I (M.G.L. Chapter 151B - Failure to Accommodate a Handicap and Retaliation for Requesting an Accommodation); Count II (M.G.L. Chapter 151B - Discrimination Based on Handicap or Perceived Handicap); and Count III

(29 U.S.C. § 2611 – Family Medical Leave Act). In May 2004, Goldwell removed Plaintiff's Complaint to the United States District Court for the District of Massachusetts.

## ARGUMENT

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; Mass.R.Civ.P. 56; see also Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997). "A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial" and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. See, e.g., Reidy v. Travelers Ins. Co., 928 F.Supp. 98, 104 (D.Mass. 1996); Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of her case. See, e.g., Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).

Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and present specific facts establishing the existence of a genuine issue of material fact. See Reidy, 928 F.Supp. at 104; Pederson, 404 Mass. at 17. The non-moving party cannot defeat the motion for summary judgment by resting on her pleadings or by relying on conclusory allegations, improbable inferences, unsupported speculation or mere assertions of disputed facts. See Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994)(abrogated on other grounds by Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992); Reidy, 928 F.Supp. at 104; LaLonde v.

Eissner, 405 Mass. 207, 209 (1989). Moreover, "a party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition." Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001); O'Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993).

Even in cases, such as the present case, in which the ultimate issue on some counts is a question of "intent," summary judgment is appropriate where the plaintiff is unable "to offer admissible evidence of the defendant's discriminatory intent, motive or state of mind sufficient to carry the plaintiff's burdens and support judgment in plaintiff's favor." Matthew v. Ocean Spray Cranberries, 426 Mass. 122, 127 (1997); see also August, 981 F.2d at 580; Phelps v. Optima Health, Inc., 251 F.3d 21, 28 (1st Cir. 2001); Reidy, 928 F.Supp. at 104; Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 705 (1992); Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673 (1999).

Here, even considering all facts in the light most favorable to Plaintiff, all counts of her Amended Complaint fail as a matter of law, and Summary Judgment should enter for Defendants.

I. **THE MCDONNELL-DOUGLAS STANDARD OF PROOF APPLIES TO PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS.**

Plaintiff's Amended Complaint includes allegations that she was discriminated and/or retaliated against on the basis of the following: (1) she requested FMLA leave; (2) she requested accommodation of an alleged handicap; and (3) she was a qualified handicapped person or was perceived as a handicapped person. Because Plaintiff cannot point to any *direct* evidence of the alleged discrimination/retaliation and must instead rely upon *circumstantial* evidence, the McDonnell-Douglas framework utilized in Title VII, ADA and Chapter 151B employment discrimination cases governs her claims. See, e.g., Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998)(framework applicable to FMLA claims); Wheelock College v. M.C.A.D., 371 Mass. 130, 135 (1976)(framework applicable to Chapter 151B claims). The McDonnell-Douglas

framework provides for three distinct stages of analysis: (1) the plaintiff must carry her burden of establishing each element of a prima facie case; (2) if she presents a prima facie case, the burden then shifts to the employer to present evidence of a legitimate, nondiscriminatory/non-retaliatory reason for the adverse employment action; and (3) if the employer presents such evidence of a legitimate, nondiscriminatory/non-retaliatory reason, then the burden shifts back to Plaintiff to prove that discrimination/retaliation was the determinative (i.e., "but for") cause of the adverse employment action.[2] See Reeves, 530 U.S. at 143, 146-47; Lipchitz v. Raytheon Co., 434 Mass. 493, 504-05 (2001). The burden of proof of unlawful discrimination remains at all times with Plaintiff. See Laurin v. Providence Hospital, 150 F.3d 52, 58 (1st Cir. 1998), quoting Dichner v. Liberty Travel, 141 F.3d 24, 30 (1st Cir. 1998); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 118 (2000).

## II. PLAINTIFF'S CLAIMS UNDER THE FAMILY MEDICAL LEAVE ACT (Count III) FAIL AS A MATTER OF LAW.

Although the precise claims of Plaintiff's Amended Complaint are difficult to discern, Plaintiff appears to allege violations of the Family Medical Leave Act (FMLA) as follows: (1) Defendants violated the FMLA by failing to provide requested leave; and (2) Defendants violated the FMLA by terminating Plaintiff's employment in retaliation for her request for FMLA leave. Both iterations of Count III fail as a matter of law.

### A. Plaintiff's FMLA Claims Are Time-Barred.

The FMLA provides that a complaint under its provisions must be filed within two years of the alleged violation. See 29 U.S.C. § 2617(c)(1) ("... an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the

---

[2] One method for a plaintiff to demonstrate "determinative cause" requires the plaintiff to show that the nondiscriminatory reason given by the employer was not the real reason for the termination decision; if the plaintiff makes such a showing, both state and federal law would permit (but not require) a factfinder to infer discrimination/retaliation. Lipchitz, 434 Mass. at 502; Reeves, 530 U.S. at 143, 146-47. Here, Plaintiff cannot

action is brought"). It is undisputed that Plaintiff's employment was terminated on December 27, 2001. Accordingly, she was required to file her FMLA complaint no later than December 27, 2003 (i.e., within two years of her termination). Nevertheless, she failed to file her FMLA complaint until April 15, 2004 – nearly four months after the statute of limitations had expired.

The FMLA provides for an extension of the statute of limitations from two years to three years in the event of a "willful" violation. See 29 U.S.C. § 2617(c)(2)("In the case of such action brought for a willful violation of [the FMLA], such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought"). It is settled law that, "in order to establish a willful violation of the FMLA, a plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Hillstrom v. Best Western TLC Hotel, 354 F3d 27, 33 (1st Cir. 2003), citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). For several reasons, Plaintiff's untimely complaint cannot be rescued by this provision.

First, Plaintiff's Amended Complaint does not allege that Defendants engaged in a "willful" violation of the FMLA and does not specifically allege facts sufficient to support a finding of willfulness.[3] Moreover, Plaintiff cannot adduce *any* evidence that Defendants here engaged in a "willful" violation of the FMLA. Even viewing the evidence in the light most favorable to Plaintiff, the evidence demonstrates that Defendants *did provide* the requested FMLA leave and, subsequently, made a reasonable business decision to eliminate Plaintiff's position. The evidence does not suggest that Defendants either knew that their decision would violate the FMLA or showed "reckless

---

present any evidence whatever tending to cast doubt upon Defendants' stated reason, and, therefore, Plaintiff is not entitled to such an inference. See *infra*.

[3] Plaintiff's Amended Complaint was filed *after* Defendants had asserted the affirmative defense of untimeliness in response to her initial complaint. Nevertheless, Plaintiff still did not include any allegations of "willfulness" in her Amended Complaint. Even standing alone, such failure in connection with Plaintiff's initial and amended pleadings is fatal to Plaintiff's claim. See e.g., Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988) ("court need not conjure up implied allegations or contrive elaborately arcane scripts" in