| | |
|---|---|
| Answer: | No. I didn't have medical restrictions. |
| Question: | Did you tell her that at that time? |
| Answer: | I told her there were no restrictions. |

(*Ex.1*, Degen Dep. at 100.)

| | |
|---|---|
| Answer: | The comfort zone was an hour and a half to be in the car. That was a comfort zone for me. That did not come as a restriction. |
| Question: | In other words, it didn't come from any physician you had? |
| Answer: | Right. I'm doing my job. I just am more comfortable when it's less than an hour and a half. |

(*Ex.1*, Degen Dep. at 81-82.)  See also (*Ex.1*, Degen Dep. at 79.)("Q: Well, whether it was a guideline, restriction, whatever… A: It was not a restriction").  Accordingly, Plaintiff expressly *admits* that, in October 2001, she was not "restricted" (i.e., she was not "substantially limited").[13]

2.    On or about October 9, 2001, Plaintiff submitted documentation to Defendants which included the following: "[Plaintiff] is capable of resuming her regular schedule." (*Ex.6*)  Though the documentation suggested that it would not be "advisable" for Plaintiff to add 16 hours per month of driving to her schedule, it did not suggest a "substantial limitation" of any activity.

3.    On or about October 17, 2001, Plaintiff submitted documentation to Defendants which twice stated that Plaintiff had "no restrictions" and was "fully functional." (*Ex.7*)  The documentation did not suggest a "substantial limitation" of any activity.

4.    On November 30, 2001, Plaintiff submitted an FMLA Certification which again did not suggest a "substantial limitation" of any activity and suggested only that Plaintiff should "limit driving to 4 days per week." (*Ex.9*)  A recommended driving reduction of 1 out of 5 working days cannot reasonably be construed to be a "substantial limitation."

5.    On several days in October, November and December 2001, Plaintiff drove to work at the Goldwell office even though she had not been required by Defendants to do so.  Plaintiff's conduct belies her claim that she was substantially limited in her ability to drive.

---

[13]    Though the parties disagree regarding the timing of Plaintiff's assertions in October, such disagreement is not material to determining whether or not Plaintiff was "handicapped" during this period.

In total, the record evidence (i.e., Plaintiff's medical documentation, admitted conduct and sworn deposition testimony) demonstrates that Plaintiff was not substantially limited in a major life activity. Accordingly, she is not a "qualified handicapped person" under the statute.

### 3. *M.G.L. c. 152 § 75B(1) Is Inapplicable To Plaintiff's Claim.*

Plaintiff expressly alleges that she is a "handicapped person," pursuant to the provisions of M.G.L. c. 152 § 75B, because she suffered a Workers' Compensation injury in 1999. See M.G.L. c. 152 § 75B(1)("Any employee who has sustained a work-related injury and is capable of performing the essential functions of the particular job … shall be deemed to be a qualified handicapped person under the provisions of [M.G.L. c. 151B]"). Plaintiff's work-related accident occurred in June 1999 - more than two years prior to her first request for an accommodation. Following that accident, Plaintiff returned to work with no restrictions; therefore, she was not suffering from any work-related injury and no longer fell within the purview of Chapter 152.[14] In February 2004, the Massachusetts Superior Court held that, under circumstances similar to those presented here, Chapter 152 § 75B(1) could not assist a plaintiff who had recovered from a work-related injury in establishing his prima facie case:

> … Under [the] interpretation [that we adopt], an employee who sustains a work-related injury is entitled to the protections of c. 151B *during the time that he is affected by that injury*. … Once the injury has resolved, his status is the same as that of all other employees; to invoke the protections of G.L. c. 151B, he must establish the elements required under that statute.

Courtois v. Legal Seafoods, Inc., 2004 WL 231311, *9, 17 Mass.L.Rptr. 296, 301(Mass.Super. 2004)(emphasis added)(*Ex.16*.)

As a matter of law, Plaintiff cannot dispute that the effects of her June 1999 accident had resolved by August 2001 (i.e., before her request for accommodation). Indeed, the Compensation Appeals Board of the State of New Hampshire previously determined that, as of August 2001, Plaintiff "had recovered from her work-related injury." After an evidentiary hearing at which Plaintiff had a full and fair

opportunity to litigate the issue, the Appeals Board issued a determination which included the following

necessary conclusions:

> ... [the claimant] sustained a work-related injury in a car accident on June 15, 1999.
> ... Until the summer of 2001, the claimant experienced steady improvement as
> confirmed by Dr. Slezak and the massage therapy notes, and continued to work full
> time.
> \*    \*    \*
> However, beginning in the summer of 2001, two years post-injury, the claimant
> began to experience new symptoms including left arm pain.   At the time, the
> claimant was also suffering significant stress associated with a divorce and turmoil
> at work. ... Based on [the evidence presented], *the Panel concluded that by August
> 2001, the claimant had recovered from her work related injury and was
> experiencing symptoms caused by other factors.*
> \*    \*    \*
> Having heard all the testimony and reviewed all the evidence, especially the
> medical records, the Panel concludes that the claimant has failed to meet her burden
> of p roof t hat t he m edical t reatment s he r eceived a fter August 2 001 w as c ausally
> related to her June 15, 1999 work related injury.

(*Garneau Affidavit*, Attachment B)(emphasis added).  Therefore, Plaintiff is collaterally estopped

from alleging that she was entitled to the benefit of Chapter 152 § 75B(1) after that time.  See Alba v.

Raytheon Co., 441 Mass. 836, 841-43 (2004).

4.    *Defendants Did Not Perceive Plaintiff As Handicapped.*

In order to prevail on a claim of "perceived" handicap, Plaintiff must demonstrate that

Defendants regarded her as "substantially limited in a major life activity."  See City of New Bedford,

440 Mass. at 465-66.  Plaintiff cannot offer any evidence to support such claim.

Taken in the light most favorable to Plaintiff, the evidence demonstrates (at best) that Defendants

complied with Plaintiff's requests for accommodation and leave related to an alleged restriction on her

ability to drive.  Driving is not a "major life activity" sufficient to implicate the protections of Chapter

151B and, therefore, even a perception that Plaintiff was limited in her ability to drive does not support

Plaintiff's Chapter 151B claim.  Moreover, like the plaintiff in Dube v. Middlesex Corp., Plaintiff cannot

---

[14]    Plaintiff's Amended Complaint alleges that her work-related injury was exacerbated by a non-work-
related auto accident.  Plaintiff testified at her deposition that the subsequent accident actually occurred in
December 2002 - after her separation from employment. (*Ex.5*, Degen Dep. II at 101.)

establish a case of "perceived" handicap:

> The 'regarded as' prong covers instances where one is discriminated against by an employer who considers the victim to have such an impairment, and requires a mistake – either mistaking whether the employee has an impairment or mistaking a nonlimiting impairment for one which is substantially limiting. ... The purpose of this section is to address inaccurate stereotypes associated with disabilities, and limitations improperly and unfairly imposed on people who are considered to be disabled. In this c ase, [plaintiff] requested accommodations from Middlesex for a damaged arm that he considered a disability. The record shows that Middlesex provided him with some accommodations, even if not all the ones he requested. He should not now be heard to argue that they inappropriately regarded and treated him as disabled by providing him with accommodations that he asked for when he claimed he was disabled. They did not misapprehend limitations based on a misconception about a disability they perceived he suffered; rather, they took him at his word and accepted his physician's statements that he was injured, and they tried to work with him, at least to some extent, to accommodate his requests.

Dube, 59 Mass.App.Ct. at 738-39. Plaintiff's claim fails as a matter of law.

### B.    Plaintiff Cannot Demonstrate A Prima Facie Case Of "Failure To Accommodate" Because She Was Permitted EVERY Accommodation That She Requested.

#### 1.    *Defendants Permitted Plaintiff To Attend All Scheduled Therapy Appointments.*

Plaintiff testified at her deposition that in early October 2001 she requested to be permitted to continue attending acupuncture therapy appointments on Fridays. Though Plaintiff has suggested that Defendants proposed a schedule that would "take her out of therapy," she can offer no evidence to support that suggestion. To the contrary, Plaintiff herself admitted under oath that she was permitted time out of work whenever she requested to attend all such appointments:

| | |
|---|---|
| Question: | Isn't it true the company allowed you to ... leave work early to attend your treatment sessions whenever you requested? |
| Answer: | Yes. |
| Question: | Including on the Fridays that you worked at Goldwell, right? |
| Answer: | Yes. |

(*Ex.1*, Degan Dep. at 208.)

#### 2.    *Defendants Responded To Plaintiff's Requests By Reducing Plaintiff's Expected Driving and Workdays.*

In response to Defendants request that she report to the Goldwell office on Fridays, Plaintiff stated that her alleged health condition prevented her from "adding 16 hours of driving per month to her

schedule," and she should, instead, be permitted to continue working from home every Friday. Defendants had a legitimate, business reason for requesting Plaintiff's presence in the Holliston office.[15] Nevertheless, Defendants informed Plaintiff that they would accommodate her request to the extent practicable by requiring her to report to the Holliston office only two Fridays of every month and allowing her to go to her alleged therapy appointments. For the following reasons, Plaintiff cannot dispute that such proposal constituted a reasonable accommodation:

1.   The recommendations contained in the October 9, 2001 note from Plaintiff's physician were as follows:  *"[Plaintiff] is capable of resuming her regular schedule*, but to take her out of her Friday therapy and add 16 hours ... of driving would not be advisable at this time." (*Ex.6*) (emphasis added). Defendants' proposal complied with those recommendations in that it:  (a) permitted Plaintiff to attend therapy; and (b) reduced the hours of expected additional driving from 16 to 8 hours per month.[16]

2.   The recommendations contained in the October 17, 2001 letter of Plaintiff's physician were as follows: *"There are no restrictions for [Plaintiff] and she is fully functional.* ... However, to take her away from her weekly therapy and add another day of driving (approximately per day 4 hours) to her schedule would not be advisable at this time. Although *[Plaintiff] has no restrictions and is fully functional*, long periods of driving at a time aggravates her condition ... I would advise only in necessary situations should [Plaintiff] add a 5th day a week of driving instead of 4 days a week to her schedule." (*Ex.7*)(emphasis added). Defendants' proposal complied with those recommendations in that it:  (a) permitted Plaintiff to attend therapy; and (b) reduced by ½ the number of Fridays that would be "necessary."

---

[15]    As described *supra*, Defendants wanted Plaintiff to come to the office in order to supervise her completion of ARTec paperwork. At this time, ARTec was withholding $14,000 in payments based on its allegations in August 2001 that Plaintiff had falsified paperwork.

[16]    To the extent Plaintiff claims that being "on the road" on the other two Fridays each month violated her alleged restrictions, her claim is contradicted by the record evidence. Plaintiff admitted at her deposition that her alleged restrictions limited her ability to "operate" a vehicle but did not limit her ability to ride as a passenger in a vehicle:

    Question:    Did that mean you operating the vehicle or did it also mean you being a passenger in a vehicle?
    Answer:    Operating.

(*Ex.1*, Degen Dep. at 83.) Plaintiff admits that being "on the road" involved riding as a passenger with other employees - not driving.

3.      The FMLA certification submitted by Plaintiff's physician on November 30, 2001 changed
        the nature of Plaintiff's requested accommodation in a very significant manner; specifically,
        rather than recommending that Plaintiff should work from home (i.e., work but limit driving)
        on Fridays, the recommendation now suggested *no work at all* on Fridays.  Plaintiff's request
        for a 4-day workweek was not reasonable, as it was *not* necessitated by her alleged health
        condition.  Indeed, Plaintiff admitted at her deposition that, at the time of her request for a 4-
        day workweek, she was not actually restricted from performing work on a fifth day.  (*Ex. 1*,
        Degen Dep. at 218.)  Nevertheless, as explained *supra*, Defendants permitted Plaintiff to work
        a 4-day workweek for the remainder of her employment.

        The undisputed facts demonstrate that Defendants responded reasonably to each and every

one of Plaintiff's requests for accommodation and, indeed, permitted each of the accommodations

that Plaintiff requested.  Accordingly, Plaintiff's claim of "failure to accommodate" fails.

## IV.    COUNT I OF PLAINTIFF'S AMENDED COMPLAINT (As That Count Alleges Retaliation for Plaintiff's Request For An Accommodation) FAILS BECAUSE PLAINTIFF CANNOT DEMONSTRATE A PRIMA FACIE CASE OF RETALIATION.

        Count I of Plaintiff's Complaint also alleges that Defendants retaliated against her because of her

request for accommodation by engaging in the following conduct:  (1) excluding Plaintiff from meetings;

(2) not returning Plaintiff's phone calls; (3) not providing Plaintiff with space, a desk and/or a telephone

on those Fridays when she worked in the Holliston office; and (4) treating and talking to Plaintiff in a

harsh manner; (5) requiring Plaintiff (for the first time) to work two Fridays per month in the Holliston

office; (6) compelling Plaintiff to request intermittent FMLA leave and loss of one day's pay per week;

and (7) terminating Plaintiff's employment.  *Amended Complaint* ¶¶ 19 and 33.

### A.      Meetings, Phone Calls, Desk Space and Demeanor

        To the extent Plaintiff alleges that items numbered (1) through (4) constituted unlawful

retaliation, her claim fails as a matter of law.  Indeed, *even assuming for the purposes of this Motion only*

that Plaintiff could prove that such conduct occurred, it would not rise to the level of a tangible adverse

employment action sufficient to state a claim of retaliation. See MacCormack, 423 Mass. at 663

(changes in working environment did not rise to the level of adverse employment action); Flanagan-

Uusitalo, 190 F.Supp.2d at 117 ("excessive scrutiny" of employment and leave request not adverse

employment action). Moreover, at her deposition, Plaintiff was unable to describe these actions in any

greater specificity and *admitted* that she was provided the use of a desk and telephone on Fridays (though

she disputed the adequacy of the desk and telephone). (*Ex.1*, Degen Dep. at 261.)

### B.    Reporting to Holliston on Fridays

To the extent Plaintiff alleges that she was asked to report to the Holliston office on Fridays only

*after* she requested an accommodation, her allegation is directly contradicted by her own testimony and

documents. Indeed, the unrebuttable evidence demonstrates that Plaintiff was asked on October 3, 2001

to report to the Holliston office on Friday, October 5, 2001. The October 3rd request was *prior to*

Plaintiff's disclosure of her alleged handicap and alleged need for accommodation; indeed, the October

3rd request was the specific event that *precipitated* Plaintiff's disclosure.

### C.    Termination of Employment

To the extent Plaintiff alleges that the termination of her employment was in retaliation for her

request for accommodation, her claim fails for all the reasons discussed *supra*. Defendants have

presented an un-rebutted, legitimate, non-retaliatory reason for eliminating her position.

### D.    "Compelled" to Request FMLA Leave

To the extent Plaintiff alleges that she was "compelled" to request FMLA leave, her claim fails.

Plaintiff requested FMLA leave in the form of a 4-day workweek despite the fact that (by her own

admission) she was not actually limited in her ability to work a 5-day week. Plaintiff's claim that

Defendants "compelled" her to make this misrepresentation is nonsensical.

**V.    COUNT II OF PLAINTIFF'S AMENDED COMPLAINT (Discrimination on the Basis of Handicap) FAILS AS A MATTER OF LAW.**

In order to establish a *prima facie* case of handicap discrimination, Plaintiff must demonstrate: (1) she is handicapped within the meaning of the statute; (2) she is qualified to perform the essential functions of the position with or without accommodation; (3) she was terminated; and (4) the position that she had occupied remained open and the employer sought to fill it. See Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 3 (1998); City of New Bedford, 440 Mass. at 461-62. For all of the reasons discussed supra, Plaintiff's claim fails because: (1) she cannot demonstrate elements 1 and 4 of the prima facie case; (2) Defendants have offered substantial evidence of a legitimate, non-discriminatory reason for the decision to eliminate Plaintiff's position; and (3) Plaintiff cannot adduce evidence to demonstrate that Defendants' asserted reason is pretextual or that the determinative cause of her termination was her alleged handicap. Defendants are, therefore, entitled to summary judgment in their favor on Count II.

**VI.    CONCLUSION.**

For the foregoing reasons and upon the cited authorities, Defendants Goldwell of New England, Inc. and R.G. Shakour, Inc. respectfully submit that their Motion for Summary Judgment should be granted on all counts of Plaintiff's Amended Complaint.

Respectfully submitted,

GOLDWELL OF NEW ENGLAND, INC.
and R.G. SHAKOUR, INC.

By their attorneys,

Jonathan R. Sigel, BBO# 559850
Renee E. Hackett, BBO# 640841
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Dated:  July 8, 2005                               (508) 791-3511
04-11024-RWZ                               28