UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JEANNE DEGAN,<br><br>      Plaintiff,<br><br>v.<br><br>GOLDWELL OF NEW ENGLAND,<br>INC. and R.G. SHAKOUR, INC.,<br><br>      Defendants. | CIVIL ACTION NO. 04CV11024 RWZ<br><br>Jonathan R. Sigel<br>BBO# 559850 |

**STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In support of their Motion for Summary Judgment, pursuant to Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, Defendants Goldwell of New England, Inc. ("Goldwell") and R.G. Shakour, Inc. ("Shakour") (collectively herein "Defendants") submit the following statement of material facts of record as to which Defendants contend that there is no genuine issue to be tried.

1.    Goldwell and Shakour distribute hair care products (including products manufactured by ARTec Systems Group, Inc. ("ARTec")) to hair salons throughout New England and parts of New York. Goldwell's principal place of business is located in Holliston, Massachusetts.

2.    On or about August 31, 1998, Goldwell hired Plaintiff to perform the position of "ARTec Brand Manager," which position she held throughout her employment by Goldwell; beginning in April 2000 and continuing through the end of her employment, Plaintiff also provided

services as ARTec Brand Manager to Shakour. (*Ex.1*, Degen Dep. at 65-66.)[1](*Ex.2*, Shakour Dep. at 29.)[2]

3. Plaintiff reported to Goldwell's Director of Education, Sheryl Holladay, regarding her work for Goldwell; Plaintiff reported to Shakour's Vice President, Renee Shakour, regarding her work on behalf of Shakour. (*Ex.2*, Shakour Dep. at 51.)(*Ex.3*, Foundas Dep. at 49-50.)[3]

4. As ARTec Brand Manager, Plaintiff was responsible for developing sales of ARTec products, conducting training classes about ARTec products at various salons, and managing the Goldwell and Shakour subcontractors who also conducted such training. One of Plaintiff's job duties was the production and administration of various paperwork required by ARTec. (*Ex.1*, Degen Dep. at 66.)

5. Plaintiff generally visited salons and attended training classes Monday through Thursday each week; during calendar year 2001 (and even earlier in her employment) Plaintiff regularly worked at her home on Fridays to perform some of her duties, including her paperwork. Plaintiff's working at home on Fridays was not because of any medical condition or therapy. (*Ex.1*, Degen Dep. at 137 & 166.)

Plaintiff's Work-Related Accident

6. On or about June 15, 1999, Plaintiff was involved in a work-related automobile accident. Plaintiff returned to work at full duty on the day after the accident and did not request any accommodations in connection with the accident. (*Ex.1*, Degen Dep. at 103-104.)

7. Plaintiff filed a Workers' Compensation claim in connection with neck and back pain that she attributed to the June 1999 accident. (*Ex.1*, Degen Dep. at 106.)

---

[1] True and accurate copies of pertinent pages of the deposition of Jeanne Degen taken on July 31, 2003 are filed herewith as Exhibit 1.
[2] True and accurate copies of pertinent pages of the deposition of Renee Shakour taken on October 7, 2004 are filed herewith as Exhibit 2.
[3] True and accurate copies of pertinent pages of the deposition of John Foundas taken on October 22, 2004 are filed herewith as Exhibit 1.

8. Goldwell's workers' compensation insurer, CNA Insurance ("CNA"), compensated Plaintiff for some treatment related to the June 1999 accident. (*Ex.1*, Degen Dep. at 106.) However, CNA refused to pay for acupuncture and other treatments Plaintiff received in 2001, claiming that such treatments were not reasonable, necessary or causally related to any work-related accident. (*Garneau Affidavit*, Attachment B.)(*Ex.1*, Degen Dep. at 106.)

9. Plaintiff appealed CNA's decision to the Compensation Appeals Board of the State of New Hampshire. (*Ex.1*, Degen Dep. at 106-107.) Plaintiff testified at an evidentiary hearing in connection with the appeal.

10. After the hearing, the Appeals Board held that, by August 2001, Plaintiff "had recovered from her work related injury and was experiencing symptoms caused by other factors." (*Garneau Affidavit*, Attachment B.) Accordingly, the Appeals Board affirmed CNA's denial of benefits, holding that Plaintiff could not demonstrate that "the medical treatment she received after August 2001 was causally related to her June 15, 1999 work related injury." (*Garneau Affidavit*, Attachment B.)

11. The final judgment of the Appeals Board was that, as of August 2001, Plaintiff "had recovered from her work-related injury." (*Garneau Affidavit*, Attachment B.)

Complaint By ARTec

12. In August 2001, ARTec's Director of Education, David Bakey, informed Defendants that ARTec believed Plaintiff had "falsified" documents that she had submitted to ARTec by "changing the dates" on the documents. (*Ex.4*.)(*Ex.1*, Degen Dep. at 153.)

13. ARTec informed Defendants that it was withholding monies that it owed to Defendants because of its dissatisfaction with Plaintiff's paperwork and its conclusion that Plaintiff had falsified documents. (*Garneau Affidavit* ¶5.)

14.     Defendants had difficulty obtaining other payments from ARTec and, at one point in time, ARTec's payments to Defendants were in arrears by approximately $60,000. (*Garneau Affidavit* ¶ 5.)(*Ex.1*, Degen Dep. at 182.)

15.     In late September or early October of 2001, Defendants requested Plaintiff to work in Goldwell's Holliston office on Friday, October 5, 2001. (*Ex.3*, Foundas Dep. at 101.)(*Ex.2*, Shakour Dep. at 103.)(*Ex.1*, Degen Dep. at 175-176.)

Plaintiff's Request for Accommodation and/or FMLA Leave

16.     Following Defendants' request that Plaintiff report to the Goldwell office on Friday, October 5, 2001, Plaintiff reported to Defendants for the first time that, because of pain she attributed to her June 15, 1999 car accident, she was receiving therapy and maintained a "guideline" of driving a car for no more than 1.5 hours at a time. (*Garneau Affidavit* ¶9.)(*Ex.1*, Degen Dep. at 81-82, 99-101.)

17.     Travel from Plaintiff's home to Goldwell's Holliston office required Plaintiff to drive two hours each way. (*Ex.5*, Degen Dep. II at 47.)[4]

18.     Ms. Garneau informed Plaintiff that Goldwell was unaware Plaintiff was receiving therapy and there was no documentation of any medical restrictions in her personnel file. (*Garneau Affidavit* ¶9.)

19.     Ms. Garneau instructed Plaintiff to provide Goldwell with medical documentation regarding any work limitations or restrictions. (*Garneau Affidavit* ¶9.)

20.     Plaintiff agreed to provide medical documentation; however, Plaintiff told Ms. Garneau that she did not have any work restrictions and the 1.5 hour driving limitation was merely a "guideline" that she followed. (*Ex.1*, Degen Dep. at 81-82, 100.)

---

[4]     True and accurate copies of pertinent pages of the second deposition of Jeanne Degen taken on October 13, 2004 are filed herewith as *Exhibit 5*.

21.  Plaintiff reported to Goldwell's facility on October 5, 2001 and reviewed ARTec paperwork with Ms. Garneau. (*Ex.1*, Degen Dep. at 181.)

22.  On October 5, 2001, Plaintiff attended a meeting with Ms. Garneau, Ms. Holladay and John Foundas, Goldwell's President and Owner. (*Ex.1*, Degen Dep. at 183.)

23.  On October 5, 2001, Mr. Foundas informed Plaintiff that Defendants wanted her to work at Goldwell's Holliston office (instead of her home) on each Friday because management needed to have more involvement with Plaintiff's ARTec paperwork. (*Ex.1*, Degen Dep. at 183-184.)

24.  On October 5, 2001, Plaintiff did not state an objection to reporting to Goldwell on Fridays. (*Ex.1*, Degen Dep. at 185.)

25.  Plaintiff provided Defendants with correspondence from her physician, Dr. Jan Slezak, dated October 9, 2001. (*Ex.6*) The note provided, in pertinent part, as follows: "She is capable of resuming her regular schedule, but to take her out of her Friday therapy and add 16 hours/month of driving would not be advisable at this time." (*Ex.6*)

26.  Plaintiff provided Defendants with correspondence from Dr. Slezak, dated October 19, 2001. (*Ex.7*) The correspondence stated, in pertinent part, as follows:

> "There are no restrictions for [Plaintiff] and she is fully functional. [Plaintiff] would like to comply with her company's wishes concerning her work schedule on Fridays. However, to take her away from her weekly therapy and add another day of driving (approximately per day 4 hours) to her schedule would not be advisable at this time.
>
> Although [Plaintiff] has not restrictions and is fully functional, long periods of driving at a time aggravates her condition causing her neck and her back to be stiff and very uncomfortable. I would advise only in necessary situations should [Plaintiff] add a 5th day a week of driving instead of 4 days a week to her schedule."

27.  On October 22, 2001, Plaintiff attended a meeting with Ms. Garneau, Ms. Holladay and an R.G. Shakour Human Resources representative. (*Ex.1*, Degen Dep. at 132.)

28. On October 22, 2001, Ms. Garneau explained to Plaintiff that Defendants needed more specific information regarding her medical status because the documentation from Dr. Slezak was unclear. (*Ex.1*, Degen Dep. at 196-197.)

29. On October 22, 2001, Defendants informed Plaintiff at that time that, pending receipt of clarified medical documentation, they would attempt to accommodate her "guidelines" by requiring her to drive to Goldwell's facility on only two Fridays each month. (*Ex.1*, Degen Dep. at 202-203.)

30. On October 22, 2001, Defendants provided Plaintiff with a document, entitled "Written Warning," which discussed problems with ARTec paperwork and confirmed that Plaintiff would be required to report to the Goldwell office on two Fridays per month. (*Ex.11*)

31. Plaintiff's alleged "restrictions" or "guidelines" limited her ability to "operate" a vehicle, but did not limit her ability to ride as a passenger in a vehicle. (Ex.1, Degen Dep. at 83.)("Q: Did that mean you operating the vehicle or did it also mean you being a passenger in a vehicle? A: Operating.")

32. In November 2001, Plaintiff requested "reduced schedule" FMLA Leave in the form of a 4-day workweek. (*Ex.8*)

33. In connection with her request for FMLA leave, Plaintiff submitted a "Certification of Health Care Provider," which included the following: (1) indicated that Plaintiff should work a "4 day work week"; and (2) listed only one limitation as "limit driving to 4 days/week." (*Ex.9*)

34. Plaintiff admitted at her deposition that she was not actually restricted from performing any work on a fifth day of the week. (*Ex.1*, Degen Dep. at 218-19)("Q: So you weren't really restricted [from] performing any work on that fifth day, right? A: Correct.")

35. Defendants informed Plaintiff that they questioned the validity of the FMLA Certification. (*Ex. 10*)

36. On December 6, 2001, Defendants requested Plaintiff to obtain a second opinion regarding the medical necessity of working a 4-day week. (*Ex. 10*)(*Ex. 1*, Degen Dep. at 218-219.)

37. On December 6, 2001, Defendants informed Plaintiff both verbally and in writing that she was permitted to work a 4-day week (and could take the Fridays off) pending receipt of the second medical opinion. (*Ex. 10*)("Pending our receipt of the Health Care Provider form enclosed herein, you are provisionally entitled to take the requested FMLA intermittent leave"). (*Ex. 1*, Degen Dep. at 220.) ("Q: Didn't Ms. Garneau sit down and explain in detail that you would be, in December, you could take those Fridays off, that your FMLA was granted pending the outcome of the medical certification issue? A: Yes.")

38. After December 6, 2001, during every week of Plaintiff's employment, Defendants permitted her to take every Friday off. To the extent Plaintiff worked on any Friday after December 6th, such work was not required by Defendants. (*Ex. 1*, Degen Dep. at 219 & 222.)

39. Defendants allowed Plaintiff to leave early to attend her treatment sessions whenever she requested, including on the Fridays she worked at Goldwell. (*Ex. 1*, Degen Dep. at 208.)

Elimination of the ARTec Brand Manager Position

40. In August 2001, Defendants began to discuss the possibility of eliminating the ARTec Brand Manager position. (*Garneau Affidavit* ¶6.)

41. During May through November 2001, ARTec sales leveled-off and Defendants were not meeting their ARTec sales goals. (*Garneau Affidavit* ¶ 4.)(*Bartfield Affidavit* ¶4.)(*Ex. 3*, Foundas Dep. at 94-95.)

42. On December 27, 2001, Defendants informed Plaintiff that her employment was terminated because the ARTec Brand Manager position had been eliminated. (*Ex.1*, Degen Dep. at 234.)

43. On December 27, 2001, Defendants offered Plaintiff a position as an educator, which Plaintiff declined. (*Ex.2*, Shakour Dep. at 146.)(*Ex.1*, Degen Dep. at 238-239.)

44. Defendants did not hire anyone to replace Plaintiff in the position of ARTec Brand Manager. (*Ex.3*, Foundas Dep. at 86.)(*Garneau Affidavit* ¶8.)(*Bartfield Affidavit* ¶6.)

45. At his deposition, David Hallgren testified that he hired Lisa Leal to work as an Urban Territory Sales Manager (not a Brand Manager), though he believed the companies wanted an ARTec Brand Manager "in the future." (*Ex.12*, Hallgren Dep. at 80, 82, 104-105.)[5] Mr. Hallgren also testified that ARTec sales had been decreasing prior to his hire and that there were not sufficient resources to hire a full-time ARTec Brand Manager. (*Ex.12*, Hallgren Dep. at 60-61.)

46. Susan Pugh testified at her deposition that an ARTec Brand Manager was not hired during her employment with Defendants. (*Ex.13*, Pugh Dep. at 101-02 and 105.)[6]

47. Lisa Kelly testified at her deposition that, as of her own separation from employment at Shakour in March 2002, an ARTec Brand Manager had not been hired. (*Ex.14*, Kelly Dep. at 105.)[7]

---

[5] True and accurate copies of pertinent pages of the deposition of David Hallgren taken on September 8, 2004 are filed herewith as *Exhibit 12*.

[6] True and accurate copies of pertinent pages of the deposition of Susan Pugh taken on May 12, 2005 are filed herewith as *Exhibit 13*.

[7] True and accurate copies of pertinent pages of the deposition of Lisa Kelly taken on March 24, 2005 are filed herewith as *Exhibit 14*.

Respectfully submitted,

GOLDWELL OF NEW ENGLAND, INC.
and R.G. SHAKOUR, INC.

By their attorneys,

_____
Jonathan R. Sigel, BBO# 559850
Renee E. Hackett, BBO# 640841
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Dated: July 8, 2005