C.   **Defendants' Termination of Degen Violated the Family Medical Leave Act**

<u>Defendants' Violation of the FMLA Was Willful</u>

Degen both alleged that the Defendants acted egregiously in terminating her in retaliation for requesting FMLA leave, *Amend. Compl.*, ¶¶ 42, 43, 50, and she has specifically alleged facts which support the Defendants' "willful" violation of the FMLA (Count III). In order to establish a willful violation of the FMLA, Degen must show that her employers "either knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by the statute." *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003). The First Circuit recognizes two prongs of this standard. Degen must proffer evidence that (1) the Defendants had actual knowledge of, or showed reckless disregard for the requirements of the FMLA, and (2) intentionally disobeyed or ignored the law. *Biggins v. Hazen Paper Co.*, 953 F.2d 1405, 1415 (1st Cir. 1992), *vacated and remanded on other grounds*, *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993) (affirming definition of willful).

The Defendants had knowledge of the requirements of the FMLA by virtue of the facts that (1) Goldwell's *Employee Policy and Procedure Manual* held out that FMLA leave was available to employees and specified that an employee had to use earned, unused vacation days in order to take the leave, SOF 1.55, 2.27; (2) after Degen made two requests, Garneau provided Degen with the "Employee Request for Leave Form," SOF 1.52, 2.24; and (3) Garneau had a discussion with Degen about FMLA leave, in which she led Degen to believe that Goldwell could provide intermittent leave and that Goldwell had to receive a second opinion before a determination on Degen's application would be made. SOF 1.55, 2.27.

21

The "touchstone" of whether the Defendants intentionally disobeyed or ignored the law is "evidence of discriminatory animus." *Lukacinsky v. Panasonic Serv. Co.*, 2004 U.S. Dist. LEXIS 25846, *24 (D. Mass. 2004). In *Lukacinsky*, the court found that overt hostility on the part of the employee's supervisor toward his medical condition, and the close temporal proximity between the employee's FMLA leave and his termination were sufficient evidence to survive summary judgment on the issue of the employer's "willful" violation of the FMLA. *Lukacinsky v. Panasonic Serv. Co.*, 2004 U.S. Dist. LEXIS at *24-25. Lukacinsky, like Degen, suffered from chronic back pain, and Panasonic terminated him shortly after he returned from FMLA leave. *Id.* at 25.

In this case, the Defendants evidenced hostility towards Degen's back and neck injuries. Garneau and Shakour referred to Degen as "a liability to the company;" the Defendants never even discussed among themselves whether an accommodation should be provided to Degen; Shakour told Degen at the October 22nd meeting that, regardless of letters from Dr. Slezak, Degen would work the new, more onerous schedule of 2 Fridays per month in Holliston and the other Fridays out in the field; Shakour told Degen that if she did not like the schedule, she could walk out the door; Garneau said Dr. Slezak's communications were "unclear," but never contacted him for clarity; Garneau failed to provide Degen with the requested FMLA forms for almost 3 weeks; and Foundas regarded anyone who could not drive all day as unemployable. *Amend. Compl.*, ¶¶ 13-14, 18-20, 32-34, 38-40, 42-51; SOF 1.33-1.34, 1.42-1.44, 1.50, 1.52, 1.77, 2.21-2.24; *Lukacinsky v. Panasonic Serv. Co.*, 2004 U.S. Dist. LEXIS at *24-25. (The Defendants' claim that Garneau was not a "decisionmaker," and, therefore, her comment about "liability" cannot be evidence of "animus," is undermined by Shakour's testimony that

Garneau may have participated in the decision to terminate Degen. *Defs.' Mem.*, at 16; SOF 1.65, 2.32.)

The Defendants' intentional disobedience of the law was also evidenced by their termination of Degen within 3 to 3 ½ weeks of Dr. Slezak's certification. *Amend. Compl.*, ¶¶ 21-26, 33, 40, 42-43, 47-51; *Defs.' First Amend. Ans.*, ¶ 47, SOF 1.60; *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998) ("close temporal proximity between two events may give rise to an inference of causal connection"). From mid-November to December 21, 2001, when Degen was called into a meeting under false pretenses, Degen did not hear from anyone at Goldwell or R.G. Shakour – the Defendants had rendered her invisible. SOF 1.57, 1.59-1.60, 2.27. Further, there was no business reason for the elimination of Degen's position, and in fact, her position as Artec Brand Manager was not eliminated. *Amend. Compl.*, ¶¶ 26, 33, 39-43, 49; SOF 1.61-1.75, 2.31-2.37; *Waite v. Goal Sys. Int'l, Inc.*, 55 Mass. App. Ct. 700, 705 (2002) (falsity permits jury to infer employer was covering up discriminatory animus).

Degen has specifically alleged facts sufficient to support a finding of a willful FMLA claim; Degen's Amended Complaint should be deemed sufficient; and summary judgment should be denied as to the issue of Degen's claim of willful violation of the FMLA. *Lukacinsky v. Panasonic Serv. Co.*, 2004 U.S. Dist. LEXIS at *22 (the issue of whether employer willfully abrogated statute is fact-driven and context-specific, and a factual determination that must be made by the trier of fact).

<u>Defendants Retaliated Against Degen for Applying for FMLA Leave</u>

To make a prima facie case of retaliation under the FMLA, Degen must show that (1) she availed herself of a protected right under the FMLA; (2) she was adversely

affected by an employment decision; and (3) there is a causal connection between her protected activity and the Defendants' decision to terminate her employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-806 (1973). The burden then shifts to the Defendants to proffer a legitimate reason for the termination. If their evidence is sufficient to create a genuine issue of material fact, the burden shifts back to Degen to show that her employers' stated reason for her termination was merely a pretext. *Id.*

The Defendants argue that Degen cannot make a prima facie case because (1) the Defendants provided her with FMLA leave, and (2) Degen cannot show there was a causal connection between her request for leave and her termination. *Defs.' Mem.*, at 11-18. With the exception of note 4, which states that Degen testified that she was capable of working a 5th day, the Defendants have waived the first prong of Degen's prima facie case. *Id.* at 12, n.4. To the extent the Defendants imply that Degen may not have qualified for FMLA leave because she was physically able to work in her home office on the 5th day (Prong 1), they are incorrect. SOF 2.25. For purposes of the FMLA, Degen is "unable to perform" her job because of a need to obtain medical treatment or a diagnosis – she does not need to be physically unable to work. *Hodgens v. General Dynamics Corp.*, 144 F.3d at 164 (interpreting 29 U.S.C. § 2612(a)(1)(D)); SOF 1.51-1.53, 2.25. Further, treatment may take the form of rest. *Lukacinsky v. Panasonic*, 2004 U.S. Dist. LEXIS at *30.

### Defendants Did Not Provide Degen with FMLA Leave

The Defendants erroneously contend that they provided Degen with FMLA leave, and even if the Defendants had provided leave, which they did not, terminating an employee for taking FMLA leave is unlawful. SOF 1.54-1.56, 2.27-2.28; *Lukacinsky v.*

24

*Panasonic Serv. Co.*, 2004 U.S. Dist. LEXIS at *49 (employee terminated after returning from FMLA leave and summary judgment denied). Degen repeatedly testified that it was her understanding that Goldwell would not make a determination about her FMLA application until Goldwell received the second medical opinion. SOF 1.55-1.56, 2.27-2.28. Degen knew that Goldwell required anyone who took FMLA leave to use earned, unused vacation days, and she had unused days; she had difficulty getting an appointment for the second opinion; she drove long distances on Fridays in October, November, and December, and in order to get off the highway on Fridays, prior to her FMLA leave, Degen informed Garneau that she would take December 21st and December 28th as vacation days. SOF 154-156; 2.27-2.28. If, as the Defendants claim, Degen had been on intermittent FMLA leave in December 2001, she would not have gone to Holliston on Friday, December 7 for an office day; she would not have worked in the field on Friday, December 14; and she would not have taken December 21 and December 28 as vacation days. SOF 2.28.

<u>Degen Can Show a Causal Connection Between Her FMLA Request and Termination</u>

In general, the burden of establishing a possible causal connection between an FMLA-protected request for leave and/or leave and a termination is "quite easy to meet." *Hodgens v. General Dynamics Corp.*, 144 F.3d at 165-166. Here, Degen was terminated just 3 to 3 ½ weeks after Goldwell received Dr. Slezak's certification for FMLA leave, *Defs.' First Amend. Ans.*, ¶ 47; SOF 1.60, 2.32; Degen's employers did not communicate with her after she requested FMLA forms from Garneau, SOF 1.57, 2.27; Degen was asked to leave her vacation and come to the office for a meeting, under false pretenses, and then she was terminated at the meeting; SOF 1.59-1.60; the reason given for Degen's

25

termination; that is, that her Artec Brand Manager position was being "dissolved," was a total fabrication, SOF 1.67-1.75, 2.32-2.37; and the Defendants refused to allow Degen to fill a 3-day per week Educator position for which Degen was hiring and which was vacant, with no explanation. Instead, they offered Degen one show a year. SOF 1.66, 2.33. Degen has established that there was temporal proximity between her termination and her application for FMLA leave and that the Defendants treated her in a hostile manner after she informed Garneau that she wanted to take FMLA leave. *Lukacinsky v. Panasonic*, 2004 U.S. Dist. LEXIS at *49-51 (temporal proximity and hostility sufficient evidence of a causal connection to satisfy final element of prima facie case).

<u>Defendants Proffered a False Reason for Degen's Termination</u>

Shakour told Degen that Artec sales were not as high as they would like and that her position of Artec Brand Manager was being "eliminated." SOF 1.60, 2.31-2.32. From the time that the Defendants terminated Degen, because her position was allegedly being "eliminated," until, at least, Fall 2002, the Defendants attempted to hire an Artec Brand Manager to replace Degen. SOF 1.67-1.75, 2.32-2.37. Degen incorporates by reference the discussion of the falsity of the Defendants' proffered reason, which is set forth in Section B of this brief. The Defendants' failure to eliminate the Artec Brand Manager position renders moot their attempt to link the alleged "elimination" with an alleged leveling of sales. SOF 2.31-2.37. The Defendants' contention that they did not replace Degen is true. *Defs.' Mem.*, at 17; SOF 1.60, 2.32-2.37. The Defendants diligently tried to replace Degen, and their attempts failed. SOF 1.67-1.75, 2.32-2.37.

Defendants' Proffered Reason for Degen's Termination Was a Pretext for Retaliation

The Defendants' reliance upon a false reason for Degen's termination, all by itself, creates the inference that the Defendants' motives for terminating Degen were unlawful. *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 501, 506-508 (2001). Further, the Defendants' dissembling is so great that they cannot even agree on who made the decision to "eliminate" Degen's position and/or to terminate Degen. SOF 1.65, 2.32. They have provided no fewer than five (5) versions of who made the decision. SOF 1.65, 2.32; *Sabbrese v. Lowe's Home Ctrs., Inc.*, 320 F. Supp. 2d 311, 323, 326 (W.D. Pa. 2004) (in retaliation action, inconsistent explanations from defendant over who actually fired plaintiff are evidence of both a causal connection and a pretextual reason). The Defendants are so invested in masking the falsity of their proffered reason that Shakour told her account executives that she would deny having offered $500 for an Artec Brand Manager, and she solicited a showing of hands of who would testify against Degen in this action, and for Shakour. SOF 1.74-1.75, 2.32. Tansey Plourde, who along with one other account executive got up and left the room, was terminated three months later, *while out on FMLA leave*, because her position was, allegedly, "eliminated." SOF 1.75-1.76; 2.37.

Degen has established her prima facie case of retaliation, discrimination, and/or interference with her FMLA rights, and she has shown that the Defendants' purported reason for terminating her employment is so implausible that a reasonable factfinder could rationally find the reason unworthy of credence. *Stepanischen v. Merchants Dispatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983) (where plaintiff makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for unlawful conduct, courts must be "particularly cautious" about

granting the employer's motion for summary judgment). Accordingly, this Court must deny the Defendants' motion for summary judgment as to Degen's FMLA claim (Count III). *Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 118 (2000) (pretext alone is sufficient to support a finding of liability).

## CONCLUSION

There are material facts in dispute about the Defendants' motivation for terminating Degen. When the motive or intent in discharging an employee is contested, as here, summary judgment is improper. *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 812 (1991) (jury should be given an opportunity, during direct and cross-examination, to observe the demeanor of the witnesses whose states of mind are at issue). For all of the aforestated reasons, the Defendants' motion for summary judgment should be denied in its entirety.

Respectfully submitted,

Jeanne Degen
By her Attorneys,

*/s/ Linda Evans*
Kevin G. Powers, BBO #405020
Linda Evans, BBO 635078
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA 02108
(617) 742-7010

DegenSJMemo

28