UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHCUSETTS

C.A. No. 04-11024-RWZ

|  |  |
|---|---|
| JEANNE DEGAN, <br>                 Plaintiff <br><br> v. <br><br> GOLDWELL OF NEW <br> ENGLAND, INC. and <br> R.G. SHAKOUR, INC., <br>                 Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT**

Defendants seek to strike paragraphs from plaintiff's affidavit, which present admissible evidence of her prima facie case of discrimination, including discriminatory animus; failure to accommodate a disability and/or retaliation for seeking an accommodation; and retaliation for seeking FMLA leave. Further, defendants seek to strike admissible evidence of plaintiff's rebuttal to defendants' asserted reason for her termination. Degen may prove that her protected activity in seeking an accommodation and/or FMLA leave caused adverse employment actions by proof that the reasons given for the adverse action were false, or by adverse action sufficiently proximate in time to the protected activity to establish causation, or by other circumstantial evidence that the protected conduct caused retaliation. *Tompkins v. Public Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1046 (3d Cir. 1997) (course of conduct adversely affecting plaintiff's employment status, ending in termination).

Here, proof that plaintiff's pretextual termination followed immediately upon protected conduct is admissible and relevant to proof of causation or illegal motive. *Bell v. Potter*, 234 F. Supp. 2d 91 (D. Mass. 2002) (immediate adverse action). Where the defendants have put the cause of termination at issue, by alleging, pretextually, that the elimination of her position caused the termination, plaintiff is permitted and required to establish that the asserted reason is false. *Com. v. Magraw*, 426 Mass. 589 (1998) (admissible evidence rebutting evidence put in issue by defendants). Defendants' arguments, which should be left to the trial judge to review all evidence in the totality of the circumstances, cannot prevail where such evidence is admissible, not hearsay, and relevant. The ultimate issue of retaliation, raised by the parties' conflicting evidence as to the defendants' motive, is not for a court to decide on the basis of briefs and transcripts, but is for a fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses. *Lipchitz v. Raytheon*, 434 Mass. 493, 499 (2001).

<u>Plaintiff Has Knowledge of Statements Made that Reflect Defendants' State of Mind</u>

Defendants argue that ¶¶ 14, 59, 60, 61, and 62 of plaintiff's affidavit are not based on plaintiff's personal knowledge. *Defs.' Mot. Strike Aff.*, at 3. The statements in ¶ 14, that plaintiff received sales numbers from Goldwell and R.G. Shakour that did not always conform with the sales numbers that she recorded in the field, in the course of her regular business activity as Artec Brand Manager, or with the sales figures of Goldwell's Regional Manager, are based on plaintiff's first-hand review of the respective sets of numbers. Her statement that the defendants were able to save money on bonuses by

2

deflating sales figures is not a conclusory assertion as the defendants argue in Part B of their motion.

Plaintiff spoke with David Hallgren, ¶ 59, who told her that he was instructed at the time of his hire that one of his priorities was to hire an Artec Brand Manager. This statement is not offered for its truth but goes to the defendant parties' then state of mind with respect to their purported reason for terminating plaintiff; that is, elimination of her position. Plaintiff, as a party to this action, has been privy to all pleadings and testimony and has first hand knowledge about the content of the deponents' testimony, but she has no first-hand knowledge as to the truth of the testimony. Nonetheless, Hallgren's deposition testimony corroborated the statement that he made to plaintiff on the telephone regarding his mandate to find an Artec Brand Manager. Plaintiff may disprove the defendants' allegations by giving an alternative explanation.

Ms. Shakour's offer of $500 to any account executive who could find her an Artec Brand Manager, ¶ 60, and her request for a showing of hands of the account executives who would support her denial of the $500 offer, ¶ 61, go to the issues of causation and to the defendants' pretextual reason for plaintiff's termination. Ms. Shakour's statements were admissions by a party agent concerning a matter within the scope of her employment made during her Vice Presidency of R.G. Shakour, *Fed. R. Evid.* 801(d)(2); they were against the defendants' interest; and they go to the defendants' motive in terminating plaintiff. *Id.* at 803(3).

To the extent that plaintiff relies on medical evaluation documents in ¶ 61, plaintiff was at all times privy to the content of the documents; the documents were

3

created for the purpose of medical diagnosis and treatment of plaintiff; and as such, the contents of the documents constitute a hearsay exception. *Fed. R. Evid.* 803(4).

### Plaintiff's Statements in ¶¶ 14, 25, 41, 54, 55, 57, 60, 62 Were Not Conclusory

With few exceptions, plaintiff's statements that the defendants claim were impermissible arguments and conclusory assertions were neither impermissible nor conclusory. Defendants' argument is extremely vague and does not identify the specific statements in plaintiff's affidavit that they allege are impermissible and conclusory. *Defs.' Mot. Strike Aff.*, at 3.

In ¶ 41, plaintiff's statement that "[s]ubtracting 4 to 5 hours from my administrative time on the other 2 Fridays, for driving to and from Holliston, was punitive, not logical," reflects a reasonable inference based on the disclosed and supported evidence. Indeed, plaintiff told her supervisors, at the October 22, 2001, meeting that she felt like she was being set up to fail. *Degen Aff.*, ¶ 39; *Degen MCAD Dep.*, at 205, *SOF Exh. 2*. Similarly, plaintiff's statement in ¶ 54 that the addition of a fifth day of driving per week was "punitive and constituted disparate treatment" goes to plaintiff's then existing state of mind and/or physical condition which were detrimentally affected by the additional day of driving and to the party defendants' state of mind (motive) for requiring the fifth day of driving. *Fed. R. Evid.* 803(3).

Plaintiff's statement in ¶ 55, that her former employers have given five (5) different accounts of who made the decision to "eliminate" her position, reflects the defendants' agents' states of mind at the time of plaintiff's termination and supports plaintiff's rebuttal of the alleged pretextual reason for her termination. Plaintiff is required, by affidavit, or deposition or both, to rebut the allegation that she was

4

terminated because her position was "dissolved." *Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 114, 121 (2000) (evidence from plaintiff, contradicting testimony of two guards, was credited and warranted verdict on cause of discharge based on a finding of pretext). Plaintiff cites deposition statements in this paragraph, as well as in some other paragraphs of her affidavit. While this may not be usual content in an affidavit, the deposition statements are evidence that plaintiff tried to communicate in an efficient manner and are based on sworn testimony.

Based on evidence that Ms. Pugh and Ms. Kelly had presented to plaintiff, including copies of advertisements for an Artec Brand Manager, and which they subsequently corroborated in their deposition testimony, plaintiff can attest to the reasonable inference that "the Artec Brand Manager *position was not eliminated.*" ¶ 57.

Plaintiff's statement in ¶ 60 that "Ms. Shakour's use of the disjunctive 'or' in the ad also evidences her intention to hire a brand manager for ARTEC, a brand manager for L'Oreal, and a brand manager for Nexxus, respectively," is not conclusory and is based in common grammatical usage. Defendants had the option of presenting an affidavit from Ms. Shakour averring that Ms. Shakour does not know the difference between the disjunctive "or" and the conjunctive "and."

Plaintiff's State-of-Mind Exceptions to Hearsay and/or Admissions by Party Opponents

Plaintiff's statements in ¶¶ 12, 13, 22, 23, 27 are out of court statements that are offered not for their truth but for the fact that the statements were made and reflected the party opponents' and/or their agents' state of mind towards plaintiff's work performance at the time the statements were made. As such, the statements are exceptions to the hearsay rule. *Fed. R. Evid.* 803(3). While the defendants do not invoke plaintiff's work

performance as a cause of termination, their expressions of high regard for plaintiff's performance, shortly before she was required to drive a fifth day, denied an accommodation, and then terminated, constitute circumstantial, relevant evidence on the issues of causation and the purported reason for plaintiff's termination.

At the time Plaintiff was promoted to Artec Brand Manager for the entire New England Region, agents Shakour and Holladay of the party opponents admitted that plaintiff's administrative tasks were so numerous that she needed an administrative assistant. ¶ 12. The fact that they never provided the assistant and then eliminated two administrative days a month from plaintiff's schedule, after she requested an accommodation, supports plaintiff's claim that the defendants harbored discriminatory animus against her based on her disability and/or perceived disability and her request for an accommodation.

Plaintiff received bonuses, ¶13; less than 6 months before plaintiff was terminated, John Foundas stated in July 2001 that he loved the way plaintiff motivated the sales staff and that he would like to clone her, ¶ 14; that same month, Shakour praised plaintiff's management of her New England region, ¶ 23; and a month later, in August 2001, Shakour told plaintiff that she had spurned Artec's president's attempt to hire plaintiff away from the defendants, because plaintiff was too valuable to let go. ¶ 27. The abruptness of the defendants' change of attitude toward the high-performing plaintiff, following her use of the term "therapy" and her requests for an accommodation and then FMLA leave, was underscored by the shock that agents of the defendants and of Artec, including plaintiff, ¶ 52, expressed about plaintiff's termination. Both the Regional Manager of Artec, which paid 50 percent of plaintiff's salary, and R.G.

Shakour's Director of Education, who was in the middle of a 6-month product launch with plaintiff, had no notice, whatsoever, that plaintiff's job was to be eliminated. ¶¶ 53, 56. The shock of these agents undercuts the defendants' claim that they began contemplating the elimination of plaintiff's position in August 2001 and goes to their motive in terminating Degen. *Def.'s SOF ¶ 40*. Shakour's inquiry as to whether plaintiff was going to take legal action is also evidence that the defendants' motive was illegal. ¶ 56.

Further, Foundas' instruction to Hallgren that he was to hire an Artec Brand Manager, ¶ 59; the pro-tem hobbling together of plaintiff's job responsibilities, ¶ 58; the placement of advertisements for an Artec Brand Manager, ¶ 57; and Shakour's offer of $500 for an Artec Brand Manager, ¶ 60, constitute admissions by agents of the party opponents that the defendants attempted to replace plaintiff in the position of Artec Brand Manager. All of these statements and conduct rebut the purported reason for plaintiff's termination and provide an alternative explanation to the defendants' allegations. Out of court admissions by a party's agents are not hearsay, and they are admissible. *Ruszcyk v. Secretary of Pub. Safety*, 401 Mass. 418 (1988).

Paragraphs ¶¶ 18, 33, 34, 44 provide evidence of plaintiff's then state of mind and/or evidence of the defendants' then state of mind concerning plaintiff's disability and/or perceived disability. Plaintiff's statement in ¶ 18 is not offered for the truth of the matter but for the fact that plaintiff's physician advised her that following her acupuncture sessions on Fridays, she needed to drive as little as possible on Fridays, Saturdays, and Sundays in order to facilitate the healing of her back and neck injuries. Statements are an exception to the hearsay rule where they are not introduced for the

truth of the matter, but for the fact that they were said, to the person(s) addressed, who then had notice or knowledge of the contents of the statement(s). *Com. v. Bush*, 427 Mass. 26 (1998); *McNamara v. Honeyman*, 406 Mass. 43 (1989). Plaintiff subsequently gave the defendants notice of her acupuncture sessions when she was told to go to the Holliston office for an October 5, 2001 meeting, and Dr. Slezak corroborated what he told plaintiff and put the defendants on notice in his letter, dated October 17, 2001, that Plaintiff needed to avoid driving for three consecutive days.

Paragraphs ¶¶ 33, 34 are party opponent admissions that Garneau and Shakour were confused about the nature of plaintiff's medical condition; Shakour regarded plaintiff's condition as a threat to the company that Shakour had "to protect;" and Garneau regarded plaintiff as "a liability to the company" and as restricted in her driving. The statements provide evidence of the defendants' then state of mind about, and animus toward, plaintiff's therapy sessions, her injured status, and any requests that she might make on the basis of her medical condition and/or perceived medical condition. Plaintiff's statements in ¶44 about her meeting with Dr. Slezak on November 6, 2001, in which he recommended that plaintiff request FMLA leave and undertake a more intense treatment regime, are offered for the fact that Dr. Slezak made the statements, thereby giving plaintiff notice and motivating her to apply for FMLA leave. Further, based on Dr. Slezak's statements, plaintiff requested FMLA application forms from Garneau. In her note to Garneau, plaintiff reiterated Dr. Slezak's statements about leave, treating with neurologist Dr. Black, and a more intense treatment regime. Plaintiff's reiteration of Dr. Slezak's statements to Garneau put the defendants on notice of a proposed, escalated treatment regime and of plaintiff's intention to apply for FMLA leave.

Conclusion

The defendants' motion to strike plaintiff's affidavit is imprecise and conclusory about what specific statements the defendants seek to strike from the affidavit, and the defendants have impermissibly placed the plaintiff in the untenable position of trying to identify the bases for the defendants' global arguments. Accordingly, plaintiff respectfully requests that the Court deny the defendants' motion in its entirety.

Respectfully submitted,

Jeanne Degen
By her Attorneys,

*/s/ Linda Evans*
Kevin G. Powers, BBO #405020
Linda Evans, BBO #635078
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA 02108
(617) 742-7010

OppStrikeAff