UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11024-RWZ

JEANNE DEGAN

v.

GOLDWELL OF NEW ENGLAND, INC. and
R.G. SHAKOUR, INC.

MEMORANDUM OF DECISION

February 6, 2006

ZOBEL, D.J.

Plaintiff Jeanne Degan was formerly employed by defendants, Goldwell of New England, Inc., and R.G. Shakour, Inc., distributors of hair care products to salons, as the brand manager for the Artec line of hair care products. Plaintiff worked in the field four days a week and by arrangement of the parties generally spent Fridays completing paperwork in her home office; her field work required several hours of driving per week. In June 1999, plaintiff suffered a work-related automobile accident, for which she received workers' compensation. She also received ongoing physical therapy and pain treatment following the accident, usually on Fridays, but continued to work full time. In April 2000, she was promoted.

On August 31, 2001, defendants received a letter from Artec, stating that plaintiff had falsified certain paperwork. It is unclear how or whether this problem was resolved, but plaintiff avers that she was told—even at the time of termination—that her

performance had been excellent. (See Pl.'s Loc. R. 56.1 Statement, Ex. 2, at 235). It is undisputed that the paperwork allegations were not the reason for plaintiff's termination. (See Defs.' Loc. R. 56.1 Statement, Ex. 2, at 136).

In late September or early October 2001, plaintiff received a message asking her to report to the office on a Friday. Plaintiff called Mary Garneau, controller and head of human resources at Goldwell, to find out the precise date; in doing so, she explained that she would need to shift her usual Friday physical therapy session and that she tried to restrict driving time on Fridays, since driving exacerbated her back pain. In response, Garneau requested documentation concerning any medical restrictions or work limitations.

On October 5, 2001, the parties met at Goldwell's office, and John Foundas, Goldwell's president and owner, asked plaintiff to begin working each Friday in the office, rather than at her home—a change that would require approximately four additional hours of driving each week.

On October 9, 2001, plaintiff gave defendants a note from her physician, stating that plaintiff was able to work her "regular schedule," but advising against the additional hours of driving that would be necessary if she were required to report to the office on Fridays. (Defs.' Loc. R. 56.1 Statement, Ex. 6).

On October 17, 2001, plaintiff's physician wrote another letter to defendants, stating that plaintiff had "no restrictions" and was "fully functional," but again advising against the additional driving time associated with spending Fridays in the office.

On October 22, 2001, plaintiff met with various Goldwell and Shakour officials. She was given a written warning, which (1) noted recent problems with plaintiff's paperwork, (2) directed plaintiff to improve her paperwork and submit all of it to Garneau, (3) directed her to start working two Fridays per month in the office, and (4) directed her to spend the other two Fridays each month in the field.  (Id., Ex. 7).

On November 9, 2001, plaintiff notified Garneau that her physician had recommended that she request intermittent leave on Fridays under the Family and Medical Leave Act ("FMLA") and requested the appropriate forms.  (Pl.'s Loc. R. 56.1 Statement, Ex. C).  She submitted her request and the required Certification of Health Care Provider on November 26, 2001.  (Defs.' Loc. R. 56.1 Statement, Exs. 8, 9).  On December 6, 2001, defendants sent plaintiff a letter, directing her to obtain a second medical opinion with a Dr. Alan Solomon; if plaintiff did not obtain the second opinion within thirty days, the FMLA leave would be denied.  The letter further explained that "[p]ending our receipt of [Dr. Solomon's opinion], you are provisionally entitled to take the requested FMLA intermittent leave."  (Id., Ex. 10).

Plaintiff was summoned to the office from her holiday vacation on December 27, 2001, before the thirty-day period had ended and before she was able to obtain a second medical opinion.  At the meeting, plaintiff's employment was terminated.

In her amended complaint, plaintiff asserts that defendants unlawfully discriminated against her on the basis of disability.  Counts I and II allege failure to accommodate, retaliation, and discrimination, in violation of M.G.L. c. 151B, § 4(16). Count III alleges a violation of the federal Family and Medical Leave Act, 29 U.S.C. §

3

2611 et seq. Defendants have moved for summary judgment on all counts. Summary judgment may be granted where no genuine factual disputes exist as to any material fact. See Fed. R. Civ. P. 56; Lincoln Nat. Life Ins. Co. v. Prodromidis, 862 F. Supp. 10, 12 (D. Mass. 1994). The record is viewed in the light most favorable to the nonmovant, and reasonable inferences are drawn in its favor. Id. The motion is denied.

I.   Count III – FMLA - Timeliness

Defendants attack plaintiff's FMLA claim on three grounds, one on timeliness and two on the merits. First, defendants argue that—even assuming plaintiff could show a FMLA violation—Count III is time-barred. FMLA actions are subject to a two-year statute of limitations. See 29 U.S.C. § 2617(c)(1). Because plaintiff's employment was terminated on December 27, 2001, the normal statutory period for filing a FMLA claim ended on December 27, 2003. (Am. Compl., ¶¶ 24-25). Her FMLA claim, however, was not filed until April 2004. (Docket # 12).

The statute of limitations may be extended, however, from two years to three where a plaintiff shows a willful violation of FMLA. See id. § 2617(c)(2). The First Circuit has held that to qualify for the three-year period, "a plaintiff must show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003) (internal quotation marks omitted). In other words, "the plaintiff must proffer evidence that (1) the defendant employer had actual knowledge of, or showed reckless disregard for, the requirements of the FMLA, and (2) intentionally

disobeyed or ignored the law." Lukacinsky v. Panasonic Serv. Co., No. 03-40141, 2004 WL 2915347, at *6 (D. Mass. 2004).

There is no dispute that defendants knew the requirements of FMLA; their December 6, 2001 letter referred to FMLA and indeed exercised defendants' right to require plaintiff to obtain a second medical opinion. (Defs.' Loc. R. 56.1 Statement, Ex. 10). As for whether defendants "intentionally disobeyed or ignored the law," I find that sufficiently disputed facts exist precluding summary judgment. When plaintiff requested FMLA leave, she was asked to get a second opinion within thirty days, but was then terminated before the expiration of that period. In other words, defendants terminated her employment knowing that she had obtained at least one FMLA certification and was attempting to obtain a second. They did so, moreover, soon after she had requested FMLA leave. See Lukacinsky, 2004 WL 2915347, at *8 ("[C]lose temporal proximity between [plaintiff's] termination and [protected FMLA activity] is potentially probative of hostility on the part of the company toward [plaintiff's] condition."). Moreover, the record contains evidence that Garneau, upon first learning of plaintiff's ongoing physical therapy treatments, informed both plaintiff and her supervisors that she was "a liability." Although defendants argue that Garneau never made such a statement, such disputes are for the jury to resolve.

Finally, there is no dispute that once defendants learned of plaintiff's driving restrictions, they actually asked her to drive more—by spending two Fridays a month on the road, and two Fridays a month in the office. (Defs.' Loc. R. 56.1 Statement, Ex. 11). Defendants maintain that they wanted plaintiff to be in the office because of

5

problems with her paperwork, but this contention is undermined by the fact that they asked her to spend the other two Fridays on the road, rather than doing paperwork in her home, as she had previously done. Defendants also insist that plaintiff's medical documentation (her physician's October 9 and October 17 letters) were unclear as to whether she had any work restrictions; the letters, however, clearly advise against additional driving on Fridays. In light of these facts, whether or not defendants acted willfully is for the factfinder. Plaintiff has presented sufficient facts from which a reasonable jury could conclude that defendants knowingly or recklessly disregarded FMLA's requirements and, therefore, that plaintiff's claim was timely.

II.     Count III – FMLA – Merits

On the merits, defendants raise two challenges to the FMLA claim. The amended complaint, broadly construed, alleges that defendants violated FMLA by (1) failing to provide requested FMLA leave, and/or (2) terminating plaintiff in retaliation for her FMLA request. Defendants argue that plaintiff cannot prevail because (1) she has not shown a causal connection between the FMLA request and her termination, and (2) in any event, she received the requested FMLA leave. I disagree.

The record contains sufficient facts from which a jury could find a causal connection between plaintiff's FMLA request and her termination—a burden that is relatively low. See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 165-66 (1st Cir. 1998). First, plaintiff was terminated less than a month after she placed her FMLA request. While "close temporal proximity" between two events is not necessarily dispositive, it "may give rise to an inference of causal connection." Id. at 168. Second,

6

defendants' timing was suspicious not only because of the short interval between plaintiffs' request and her termination, but also because plaintiff was terminated before she was able to obtain a second medical opinion as requested by defendants.  Third, the record contains evidence that once defendants learned that plaintiff was receiving ongoing treatment, defendants expressed serious concern, treated her with hostility, and voiced doubts about her medical condition.  Finally, there is evidence that defendants regarded plaintiff's medical condition as a liability.  These facts are sufficient to withstand summary judgment on the issue of causation.

     Defendants argue that they have proffered a legitimate, non-discriminatory business reason for plaintiff's termination—i.e., the decline in Artec sales and the corresponding decision to eliminate the Artec brand manager position.  Even assuming defendants have made such a showing, however, plaintiff has made a sufficient showing of pretext to survive summary judgment.  For example, although defendants assert that they began thinking about eliminating plaintiff's position in August 2001 because of declining Artec sales, the record shows that (1) defendants initiated the launch of new Artec hair color products beginning in September 2001, and (2) plaintiff was asked to participate in that six-month promotional project.  It makes little sense that defendants would launch a new Artec product while eliminating the position of Artec brand manager.  And it makes little sense that defendants would involve plaintiff in a six-month project if they were already considering firing her.  Indeed, the R.G. Shakour employee with whom plaintiff worked on this product launch was "just shocked" when

she learned that plaintiff had been terminated in the middle of the launch. (Pl.'s Loc. R. 56.1 Statement, Ex. 4, at 72).

Moreover, it is unclear whether defendants actually eliminated plaintiff's position. The record contains evidence that defendants asked another employee about finding a replacement for plaintiff after she was terminated (id. at 78), and that they placed advertisements seeking brand managers for their Artec line, among others (id., Exs. J, K). Further, David Hallgren, a Goldwell executive, testified that hiring an Artec brand manager was "one of [his] top priorities" in 2002 (id., Ex. 7, at 54), and Susan Pugh, an account executive for defendants, likewise testified that defendants were advertising for a new Artec brand manager (id., Ex. 6, at 77-78). From this evidence, a reasonable jury could find that plaintiff's termination was not due to the elimination of her position.

Finally, defendants argue that plaintiff's FMLA claim should be dismissed because plaintiff's FMLA requests were granted. As evidence, they point to their December 6 letter, in which they "provisionally" granted plaintiff's request for intermittent FMLA leave. Regardless of whether plaintiff was allowed to take Fridays off after December 6, there is no dispute that plaintiff worked on December 7 in the office (she did not receive the letter until that day) and December 14 in the field. She took vacation on December 21. It is difficult to understand how defendants can be regarded as having granted plaintiff's FMLA request not to work on Fridays when she (1) worked on two subsequent Fridays in December, whether or not she was formally required to, and (2) was terminated before she was able to obtain the second medical opinion that defendants represented would entitle her to FMLA leave. Because factual

disputes exist as to whether plaintiff was told she could take all Fridays off after December 6, or whether she was under the impression that she was not really entitled to FMLA leave until she obtained a second opinion, summary judgment on the basis that her FMLA request was "granted" is inappropriate.

Accordingly, summary judgment as to Count III is denied.

III.   Count I – Failure to Accommodate Under Chapter 151B

Insofar as Count I alleges failure to accommodate in violation of M.G.L. c. 151B, defendants claim that plaintiff has not made out a prima facie case. To make out a prima facie case of failure to accommodate at the summary judgment stage, a plaintiff must demonstrate "1) that she is a qualified individual with a disability, 2) that the employer, despite knowing of the employee's physical or mental limitations, did not reasonably accommodate those limitations, and 3) that the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment." Flanagan-Uusitalo v. D.T. Indus., Inc., 190 F. Supp. 2d 105, 115 (D. Mass. 2001).

Defendants first argue that plaintiff cannot establish the first element of a prima facie case because she is not a qualified handicapped person under chapter 151B. The statute defines a "handicap" as: "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment." M.G.L. c. 151B, § 1(17).

Regardless of whether plaintiff was substantially limited in a major life activity, the record suggests that defendants regarded her as being so impaired. Plaintiff has

9

proffered evidence that defendants expressed serious concern over her continuing medical treatment for a work-related injury and that they may have referred to her continuing medical difficulties as "a liability." These facts give rise to an inference that defendants feared that plaintiff suffered an impairment.

More telling is the fact that upon learning of her ongoing treatment, defendants immediately requested documentation of any "work restrictions" that plaintiff suffered. In other words, defendants were worried about whether plaintiff's physical condition impaired her ability to work. Working is indisputably a major life activity. See id. § 1(2). Defendants' fear that plaintiff's ability to work was impaired or restricted thus translates into a fear that a major life activity was impaired. In short, defendants viewed plaintiff as potentially handicapped. See Dube v. Middlesex County, 59 Mass. App. Ct. 734, 739 (2003) ("The 'regarded as' prong covers instances where one is discriminated against by an employer who considers the victim to have such an impairment . . . either mistaking whether the employee has an impairment, or mistaking a nonlimiting impairment for one which is substantially limiting.").

Defendants also argue that plaintiff cannot make out a prima facie case of failure to accommodate because her requests were accommodated. As explained above, triable issues of fact exist as to whether defendants actually "granted" plaintiff's FMLA request. Moreover, it is undisputed that after plaintiff submitted medical letters on October 9 and October 17, 2001, which advised against requiring plaintiff to drive on Fridays, defendants on October 22 directed plaintiff to drive every Friday—either by coming into the office or going out in the field.

Thus, defendants' challenges to the first and second prongs of plaintiff's prima facie case fail, and summary judgment on Count I (failure to accommodate) is denied.

IV.     Count I – Retaliation Under Chapter 151B

Insofar as Count I claims retaliation, defendants contend that plaintiff cannot make out a prima facie case. "In order to establish a prima facie case of retaliation under [chapter 151B], a plaintiff must prove that: (1) he or she engaged in protected conduct under Chapter 151B; (2) he or she suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse action." See Lukacinsky v. Panasonic Serv. Co., No. 03-40141, 2004 WL 2915347, at *25 (D. Mass. 2004).

Defendants wisely do not challenge the first two elements of plaintiff's claim, since plaintiff clearly engaged in protected conduct when she filed her FMLA request, see Lukacinsky, 2004 WL 2915347, at *9, and also suffered at least one adverse employment action when she was terminated. As explained above with regard to Count III, plaintiff has presented sufficient evidence of a causal connection, allowing her to withstand summary judgment on this issue. Accordingly, summary judgment is denied as to Count I (retaliation).

V.      Count II – Discrimination Under Chapter 151B

Finally, defendants contend that plaintiff has failed to make out a prima facie case of discrimination in Count II and that she cannot rebut the legitimate, non-discriminatory reason defendants have proffered for her termination. To make out a prima facie case of discrimination under Chapter 151B, the plaintiff must show "that 1)

11

she is handicapped within the meaning of the statute, 2) she is qualified to perform the essential functions of the job with or without reasonable accommodation, 3) she was terminated or otherwise subject to an adverse action by her employer, and 4) she was replaced by a non-handicapped person or the position she had occupied remained open and the employer sought to fill it." Flanagan-Uusitalo, 190 F. Supp. 2d at 114 (internal citations and quotation marks omitted). However, "the plaintiff is not required, as part of her prima facie case, to show that she was terminated solely because of her handicap." Id.

Defendants again argue that plaintiff has not shown the first or fourth elements. As previously explained, however, a triable issue of fact exists as to whether plaintiff was regarded by defendants as handicapped and thus fell within the statutory definition. See M.G.L. c. 151B, § 1(17). A factual dispute also exists as to whether defendants really eliminated the position of Artec brand manager. Finally, assuming that defendants have shown a legitimate, non-discriminatory reason for terminating plaintiff, plaintiff has presented sufficient evidence that the proffered reason is pretextual, thereby rendering summary judgment inappropriate.

Accordingly, summary judgment on Count II is denied.

VI.   Conclusion

Defendants' motion for summary judgment (#18 on the docket) is denied. Defendants' motions to strike plaintiff's Local Rule 56.1 statement (#30) and plaintiff's affidavit (#31) are denied. To the extent plaintiff's submissions contain material that is

inadmissible or improper under the relevant rules, it has been disregarded in the disposition of the summary judgment motion.

| | |
|---|---|
| _____<br>         DATE |  /s/ Rya W. Zobel_____<br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |